MICHIGAN EDUCATIONAL SUPPORT PERSONNEL
ASSOCIATION v SOUTHFIELD PUBLIC SCHOOLS

Docket No. 77037. Submitted December 6, 1984, at Lansing.—Decided
March 14, 1985.

Petitioner, Michigan Educational Support Personnel Association,
filed a petition with the Michigan Employment Relations Com-
mission (MERC) seeking to add regular substitute custodial
workers employed by respondent, Southfield Public Schools, to
its certified collective bargaining unit. MERC determined that
the workers in question could appropriately be included in the
same bargaining unit with the other educational support em-
ployees represented by the petitioner and ordered that an
election be held to determine whether the workers in question
want representation by petitioner. Respondent appealed as of
right. *Held:*

1. The determination of an appropriate unit is a finding of
fact to be made by MERC. Such a determination will not be
overturned by the Court of Appeals if supported by competent,
material, and substantial evidence. In this case, MERC's find-
ings were supported by competent, material and substantial
evidence.

2. The election ordered by MERC was not barred by the
public employment relations act.

Affirmed.

M. J. KELLY, J., dissented. He agreed that the regular substi-
tute custodial workers are employees within the meaning of the
public employment relations act and should thus be awarded
collective bargaining rights. However, he disagreed that the
workers could belong in the same bargaining unit representing
the regular custodial workers. He opined that since the employ-
ment interests of the two groups of workers are so antagonistic,
inclusion in the same bargaining unit could not be justified. He

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 660 *et seq.,* 1764-1775.
Bargainable or negotiable issues in state public employment labor
relations. 84 ALR3d 242.

would set aside petitioner's certification as the appropriate unit for the workers in question.

OPINION OF THE COURT

1. LABOR RELATIONS — BARGAINING UNITS — PUBLIC EMPLOYMENT RELATIONS ACT — EMPLOYMENT RELATIONS COMMISSION.

    The determination of an appropriate collective bargaining unit is one for the Michigan Employment Relations Commission to make; where public employees are involved, such a determination involves two inquiries: (1) which individuals are employees within the public employment relations act; and (2) what group within the class of employees shares a community of interests such that representation by a single bargaining agent will meet the statutory goal of assuring to employees the fullest freedom in exercising the rights guaranteed by the act (MCL 423.9e, 423.201 *et seq.;* MSA 17.454[10.4], 17.455[1] *et seq.).*

2. LABOR RELATIONS — BARGAINING UNITS — APPEAL — EMPLOYMENT RELATIONS COMMISSION.

    A bargaining unit determination made by the Michigan Employment Relations Commission should not be disturbed unless clearly unsupported by competent, material, and substantial evidence (MCL 423.23[2][e]; MSA 17.454[25][2][e]).

3. LABOR RELATIONS — BARGAINING UNITS — EMPLOYMENT RELATIONS COMMISSION.

    The objective of the Michigan Employment Relations Commission when designating collective bargaining units is to create the largest possible unit consistent with a community of interest of the membership.

DISSENT BY M. J. KELLY, J.

4. LABOR RELATIONS — BARGAINING UNITS.

    *Substitute or on-call employees generally have interests that are antagonistic to those of regular employees and should be excluded from collective bargaining units representing regular employees.*

*Foster, Swift, Collins & Coey, P.C.* (by *Stephen O. Schultz),* for petitioner.

*Shifman, Goodman & Carlson, P.C.* (by *Philip J. Goodman),* for respondent.

Before: J. H. GILLIS, P.J., and M. J. KELLY and
K. N. SANBORN,* JJ.

PER CURIAM. Respondent, Southfield Public
Schools, appeals as of right from a determination
of the Michigan Employment Relations Commis-
sion (MERC) that the regular substitute custodial
workers employed by the school system could ap-
propriately be included in the same bargaining
unit with the other educational support employees
currently represented by petitioner, Michigan Edu-
cational Support Personnel Association (MESPA).

Respondent first asserts that MERC erred in its
finding that the substitute custodians are entitled
to bargaining rights. Respondent argues that since
the substitute custodians' right to work was en-
tirely dependent upon the absences of the regular
custodians, the substitute custodians were "casual"
employees, and thus disqualified from membership
in a unit of organized employees pursuant to the
MERC decision in *Jackson Public Schools*, 1983
MERC Lab Op 579. Respondent also argues that
whether substitute custodians are includable in
the existing bargaining unit is a question of law,
not fact, and thus respondent advocates a broad
standard of review.

We disagree. Pursuant to MCL 423.9e; MSA
17.454(10.4). the task of determining an appropri-
ate collective bargaining unit is left to MERC.
Such a determination involves two inquiries, as
noted by the Court in *Food Store Employees Un-
ion, Local 347, Amalgamated Meat Cutters &
Butcher Workmen of North America v National
Labor Relations Board*, 137 US App DC 248; 422
F2d 685, 689 (1969):

"The first question is which individuals are 'employ-

* Circuit judge, sitting on the Court of Appeals by assignment.

ees' within the policy of the Act; the next is what group within the class of employees shares a community of interests such that representation by a single bargaining agent will meet the statutory goal of 'assur[ing] to employees the fullest freedom in exercising the rights guaranteed' by the Act." (Footnote omitted.)

Further, it is well settled that the determination of an appropriate unit is a finding of fact which will not be overturned by this Court if supported by competent, material, and substantial evidence. *Michigan Coaches Ass'n v Warren,* 119 Mich App 85, 88; 326 NW2d 432 (1982); *Lansing School Dist v Michigan Employment Relations Comm,* 117 Mich App 486, 489-490; 324 NW2d 62 (1982).

Respondent's contention that the substitute custodians were mere "casual" employees and thus not entitled to membership in a unit of organized employees was rejected by MERC below. MERC began by noting that none of the cases cited by respondent supported the conclusion that "substitutes *per se* are not entitled to bargaining rights", and thus an analysis of the particular facts presented was necessary. MERC first looked to the number of hours worked, and found that most substitutes averaged 30 or more hours per week and that eleven of the substitutes work approximately as many hours as the average for all full-time regular custodial employees. As to regularity of employment, although they could refuse work assignments, MERC found that this was not common and that many substitutes frequently worked five-day weeks.

Further, MERC noted that most substitutes were given "Letters of Assurance" at the end of the school year, indicating the respondent's intention to rehire them the following school year. MERC considered this fact to be "evidence of the continuing nature and built-in expectations" that

characterized both sides of the employment relationship. Regarding compensation, while substitutes were paid less than regular custodians, both served a probationary period at reduced wages, both received mileage reimbursement for on-the-job transportation, and both were eligible for in-service training.

Next, MERC considered the supervisory aspects of the relationship, and found that substitutes and regular employees shared the same on-site supervisors and reported to the same departmental supervisor. Identical criteria were used in the evaluation of the employees and both could be fired for unsatisfactory performance.

Our review of the record in this case leads us to conclude that MERC's findings are supported by competent, material and substantial evidence. Unlike the substitute teachers in *Lansing School Dist,* 1978 MERC Lab Op 453, cited by respondent, the substitute custodians in the instant case maintained a strong employment relationship with respondent. We therefore affirm MERC's finding that the substitute custodians were "employees" within the meaning of the public employment relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* rather than mere "casual" employees without the right to be included in an organized labor unit.

The next question to be addressed is whether the substitute custodians and the educational support employees already belonging to MESPA "share a community of interests such that representation by a single bargaining agent will meet the statutory goal of 'assuring to employees the fullest freedom in exercising the rights' guaranteed by the Act". *Food Store Employees Union, supra,* p 689. The objective in designating bargaining units is to create the largest possible unit consistent with a community of interest of the

membership. *Lansing School Dist v Michigan Employment Relations Comm, supra,* p 490.

In this case, MERC concluded that the substitute custodians share a community of interest with the other regularly employed custodians sufficient to justify inclusion in the same bargaining unit. MERC based this conclusion on the fact that the two types of employees perform essentially the same work in the same buildings under the same supervision and that work assignments were delegated in the same manner for both regular and substitute custodians. MERC then noted that certain provisions contained in the present collective bargaining agreement could be considered antagonistic to the interests of the regular substitute custodians. For example, a concern among regular employees is the limitation of the number of hours made available to substitute custodians in order to prevent over-utilization of the lower paid substitutes. MERC nonetheless concluded that this was not enough to defeat the statutory right of the affected employees to organize together. The opinion states: "It is not uncommon for a labor organization to be required to balance the competing interests of various subgroups of employees, in defining specifically beneficial rights sought by its constituents." We agree with this observation, and thus decline to reverse the commission's findings and conclusions regarding the appropriate bargaining unit in which to include the substitute custodians. In doing so, we are not unmindful of the commission's expertise in these matters, and thus we believe it is appropriate to give considerable deference to their analysis of issues such as those presented in this case.

We also reject respondent's contention that the election held pursuant to a directive order of MERC, in which all 19 substitute custodians se-

lected MESPA as their collective bargaining agent, was barred by § 14 of PERA. Section 14 provides as follows:

"An election shall not be directed in any bargaining unit or any subdivision within which, in the preceding 12-month period, a valid election was held. The commission shall determine who is eligible to vote in the election and shall promulgate rules governing the election. In an election involving more than 2 choices, where none of the choices on the ballot receives a majority vote, a runoff election shall be conducted between the 2 choices receiving the 2 largest numbers of valid votes cast in the election. An election shall not be directed in any bargaining unit or subdivision thereof where there is in force and effect a valid collective bargaining agreement which was not prematurely extended and which is of fixed duration. A collective bargaining agreement shall not bar an election upon the petition of persons not parties thereto where more than 3 years have elapsed since the agreement's execution or last timely renewal, whichever was later." MCL 423.214; MSA 17.455(14).

In the instant case, the bargaining agreement between MESPA and the school district was to expire by its own terms on August 26, 1984. The direction of the election was made on March 2, 1984, within the effective period of the agreement. Accordingly, an election within the MESPA bargaining unit would appear to be barred by § 14. The substitute custodians, however, were not members of the bargaining unit. Since the prohibition on elections set forth in § 14 refers only to elections within the bargaining unit, such prohibition does not apply to the instant case.

Affirmed.

M. J. KELLY, J. *(dissenting)*. I agree that the regular substitute custodians are "employees"

within the meaning of the public employment relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* and should thus be awarded collective bargaining rights. I do not, however, agree that these employees belong in the same bargaining unit representing the regular custodians.

At oral argument, counsel for the school system observed that the strangest element in this case is MERC's failure to distinguish or even mention the strikingly similar case of *Jackson Public Schools,* 1983 MERC Lab Op 579, aff'd *JCEA Affiliates Ass'n v Jackson Public Schools* (Docket No. 72370, decided August 4, 1984 [unreported]). In *Jackson Public Schools,* MERC determined that "standby" school district bus drivers should not be included in the same bargaining unit with regular drivers:

"The record establishes that the standbys in this case are employed on an on-call substitute basis only; may refuse assignments; are paid at a different rate than regular employees; receive no fringe benefits; and work a varying number of hours, depending on their interest and the length of their employment. On the basis of these factors, we find the standby drivers and standby riders to be casual employees lacking a sufficient relationship to the bargaining unit to justify their inclusion in the unit." 1983 MERC Lab Op 583.

In *City of Zeeland,* 1980 MERC Lab Op 765, 771, MERC was even more emphatic against the inclusion of "special" police officers in the same unit with regular police officers and part-time officers working regular schedules:

"In the instant case, individual officers are not scheduled. One night shift per week plus other open time is available to them and offered on the basis of seniority. In fact, the most senior special officer has worked less

than another officer by his own choice. Except for the Saturday night shift these three officers work only when substituting for regular officers. They are not regularly scheduled part-time employees, but substitute, on-call employees. They are similar to the substitute teachers discussed in *Waterford Schools,* [1977 MERC Lab Op 697] and *Lansing School District,* [1978 MERC Lab Op 453] in that they have no regularly scheduled days, they work as substitutes for regular employees, they may be called at any time, and may refuse an assignment, in which case, the Employer offers the assignment to another substitute. We find, therefore, on the facts of this case, that the special officers are not regularly scheduled part-time employees but are substitute employees subject to the principles we have enunciated regarding substitute teachers in *Waterford Schools, supra.* Accordingly, they may not be included in the same unit with full-time or regularly scheduled part-time employees."

MERC has been consistent in its exclusion of substitute employees from bargaining units representing regular employees. See *Kingston Community School,* 1982 MERC Lab Op 506 (substitute bus drivers); *Waterford School Dist,* 1977 MERC Lab Op 697 (substitute teachers).

The factors compelling MERC to exclude substitute employees from the bargaining units of regular employees are present in the instant case. These substitute custodian employees are on-call, irregularly scheduled, and have the option of refusing work. Moreover, they are not entitled to fringe benefits, as are the regular employees. I believe that, on this record, the employment interests of the two groups of employees are so antagonistic that inclusion in the same bargaining unit cannot be justified. As is evidenced by the 1982-1984 MESPA Collective Bargaining Agreement, a priority of the regular employees is to limit the number of hours of work made available to substi-

tute employees. This goal protects the continued employment of the regular employees and is diametrically opposed to the substitutes' interest in expanding the hours available to them so as to obtain paychecks suitable to support themselves without resort to other sources.

Furthermore, while I acknowledge that our opinion in the *Jackson* appeal carries no precedential weight, since it is unpublished, I am persuaded by its rationale. In that case, we approved MERC's policy of excluding substitute or on-call employees from bargaining units of regular employees because it insured the likelihood that members of the same unit would be able to agree among themselves on the priorities of their collective bargaining demands. We noted that substitute employees will generally have little reason to be concerned with fringe benefits, grade levels of pay, or seniority rights, and that their primary concern is with the standard rate of pay for substitute employees. Substitutes would thus have little incentive to compromise on entry level rates of pay in order to improve the fringe benefit package or the grade levels.

I would hold that MERC's finding in this case that the substitute and regular employees could appropriately be included in the same bargaining unit is not supported by competent, material and substantial evidence and I would set aside the certification of MESPA as the substitute custodians' representative.