MICHIGAN EDUCATION ASSOCIATION v CLARE-GLADWIN
INTERMEDIATE SCHOOL DISTRICT

Docket No. 88115. Submitted April 14, 1986, at Lansing. Decided
August 4, 1986.

The Michigan Education Association and its local affiliate the
Clare-Gladwin Intermediate Education Association filed a unit
clarification petition with the Michigan Employment Relations
Commission (MERC) in regard to the affiliate's bargaining unit
of nonsupervisory professional staff. The petition sought to
clarify the unit placement of a position for the Coordinator/
Consultant for the Gifted and Talented Education Program in
the Clare-Gladwin Intermediate School District. Following
hearings, the MERC found that the position was a supervisory
position and, as such, not properly represented by the petition-
ers. The petitioners appeal contending that the findings of the
MERC are not supported by competent, material and substantial
evidence on the record considered as a whole. Held:

1. The Legislature has segregated supervisory and executive
personnel from other personnel for purposes of collective bar-
gaining.

2. It is not the exercise of authority, but the delegation of
authority, which is indicative of the attributes of a supervisor.
The coordinator had been delegated authority to recommend
that certain individuals be hired and to direct any members of
her staff. Her powers were not theoretic, but real. The findings
by the MERC have ample support in the record.

3. Under the circumstances of this case, the MERC properly
distinguished a newly-created position, with delegated responsi-
bilities not yet exercised, from a long-standing position with
delegated responsibilities as evidenced by actual practice in the
workplace.

Affirmed.

REFERENCES
Am Jur 2d, Labor and Labor Relations §§ 359, 610-612, 685.
Who are "supervisors" within meaning of National Labor Relations
Act (29 USCS §§ 151 et seq.) in education and health services. 52
ALR Fed 28.

1. LABOR RELATIONS — COLLECTIVE BARGAINING UNITS — SUPERVISORY PERSONNEL.

The Legislature has segregated supervisory and executive personnel from other personnel for purposes of collective bargaining (MCL 423.9e, 423.213; MSA 17.454[10.4], 17.455[13]).

2. LABOR RELATIONS — SUPERVISOR — LABOR MANAGEMENT RELATIONS ACT — UNITED STATES CODE.

The Labor Management Relations Act defines the term "supervisor" to mean any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment; the existence of any one of these powers, regardless of the frequency of its exercise, is sufficient to confer supervisory status on an employee, as long as the existence of the power is real rather than theoretic; it is not the exercise of authority, but the delegation of authority, which is indicative of the attributes of a supervisor (29 USC 152[11]).

*Foster, Swift, Collins & Coey, P.C.* (by *Arthur R. Przybylowicz* and *Sharon L. LaPointe*), for petitioners.

*Thrun, Maatsch & Nordberg, P.C.* (by *Kevin S. Harty* and *David J. Riewald*), for respondent.

Before: ALLEN, P.J., and MACKENZIE and J. P. SWALLOW,* JJ.

J. P. SWALLOW, J. Petitioners, Michigan Education Association and its local affiliate, the Clare-Gladwin Intermediate Education Association appeal from a September 26, 1985, order of the Michigan Employment Relations Commission (MERC).

The MERC found that the position of Coordinator/Consultant for the Gifted and Talented Educa-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tion Program of the respondent school district was a supervisory position and, as such, not properly represented by the Clare-Gladwin Intermediate Education Association, which represents the teaching, and not the supervisory, personnel within the school district.

Petitioner's sole contention on appeal is that the MERC's finding that the position of coordinator is a supervisory or administrative position is not supported by competent, material and substantial evidence on the record considered as a whole. MCL 423.216(e); MSA 17.455(16)(e); *Regents of the University of Michigan v Employment Relations Comm,* 389 Mich 96, 103; 204 NW2d 218 (1973).

In November, 1984, shortly after petitioners learned that respondent district was creating the position of program coordinator, they petitioned for unit clarification. The first coordinator was hired in January, 1985, some four weeks prior to the hearing on the petition. The coordinator's responsibilities had previously been performed by an assistant superintendent. As the program for gifted students grew, a need for a full-time coordinator was realized.

At the date of the hearing, the coordinator's responsibilities included identifying gifted students, establishing policies for the program, advising instructors, parents and students in gifted-talented program matters, and supervision of a shared secretary.

Because the program under the direction of the coordinator had just commenced and budgeting had not yet been approved, a number of the responsibilities allocated to the coordinator were only on paper at the time of the hearing. The coordinator had the power to develop the program budget, was to pursue state and federal funding and had discretion to spend money allocated to the

program. Part and parcel of the spending power was the discretion to employ assistants. Personnel hired for the program would first be screened by a committee of teachers, administrators and parents, who would then submit a list of eligible applicants to the coordinator. The coordinator would recommend an applicant to the superintendent, who, if the applicant met his approval, would submit the recommendation to the school board for ultimate approval.

Petitioners argued below, as they argue here, that the testimony regarding the coordinator's supervisory responsibilities was speculative, i.e., it was merely testimony of responsibilities allegedly to be performed in the future. The school district countered that it was clear that supervisory powers were in fact delegated to the coordinator and that, as such, the position of coordinator was a supervisory position.

The MERC agreed with the school district, finding that the position of coordinator was supervisory in nature for the reason that supervisory responsibilities had in fact been delegated to the coordinator, "although such responsibilities have not yet been exercised or come to fruition."

The Legislature has segregated supervisory and executive personnel from other personnel for purposes of collective bargaining. Under § 13, MCL 423.213; MSA 17.455(13), of the public employment relations act the "unit appropriate" for collective bargaining purposes is to be determined by the MERC as provided in § 9e of the Michigan labor mediation act, MCL 423.9e; MSA 17.454(10.4), which states:

> The commission, after consultation with the parties, shall determine such a bargaining unit as will best secure to the employees their right of

collective bargaining. The unit shall be either the employees of 1 employer employed in 1 plant or business enterprise within this state, *not holding executive or supervisory positions,* or a craft unit, or a plant unit, or a subdivision of any of the foregoing units. If the group of employees involved in the dispute was recognized by the employer or identified by certification, contract, or past practice, as a unit for collective bargaining, the commission may adopt that unit. [Emphasis added.]

The MERC opinion in the instant case reveals that the MERC has developed a means of identifying supervisory personnel. However, the Legislature and appellate courts of this state have heretofore been silent with regard to this issue.

The term "supervisor" has not been defined under the Michigan labor mediation act nor is the term defined under the public employment relations act. Neither this Court nor our Supreme Court has imposed a judicial definition of "supervisor" or "supervisory" on the MERC or discussed the rationale behind segregating the bargaining units of supervisors from the bargaining units of other employees. Nonetheless, we need not address the MERC's ruling in a vacuum. When this Court encounters a void of Michigan precedent on a labor subject, it finds persuasive federal labor relations law. *Bd of Control of Ferris State College v Michigan AFSCME, Council 25,* 138 Mich App 170, 176; 361 NW2d 342 (1984).

The Congress recognized a need to segregate supervisors from other personnel because of its concern about unrestricted unionization of supervisors. Congress was concerned that fraternal union feelings would impair a supervisor's ability to apply his employer's policy to subordinates according to the employer's best interest. See *NLRB v Bell Aerospace Co,* 416 US 267; 94 S Ct 1757; 40 L

Ed 2d 134 (1974). It withdrew certain protections from "supervisory" employees in order to give employers more freedom to prevent a prounion bias from interfering with the independent judgment of employees holding supervisory positions. *NLRB v Pilot Freight Carriers, Inc,* 558 F2d 205 (CA 4, 1977), cert den 434 US 1011; 98 S Ct 723; 54 L Ed 2d 754 (1978).

"Supervisors" are defined in the Labor Management Relations Act, 29 USC 152(11):

> (11) The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

The federal courts have consistently held that 29 USC 152(11) is to be read in the disjunctive with the existence of any one of the statutory powers, regardless of the frequency of its exercise, being sufficient to confer supervisory status on the employee, as long as the existence of the power is real rather than theoretic. *NLRB v Pilot Freight Carriers, supra,* p 207. Said another way, it is not the exercise of authority, but the delegation of authority, which is indicative of the attributes of a "supervisor."

Applying the above definition to the facts before us, the MERC's finding has ample support in the record. The coordinator had been delegated authority to recommend that certain individuals be hired. The coordinator had been delegated authority to direct any members of her staff. Her powers

were not theoretic, but real. The MERC, in its decision, also distinguished a newly-created position, with delegated responsibilities not yet exercised, from a longstanding position, with delegated responsibilities as evidenced by actual practice in the workplace. Under the circumstances of this case, we find that distinction to be proper.

Affirmed.