TAYLOR FEDERATION OF TEACHERS, MFT, AFT, AFL-CIO v
TAYLOR BOARD OF EDUCATION

Docket No. 95986. Submitted November 12, 1987, at Detroit. Decided
February 10, 1988. Leave to appeal applied for.

The Taylor Federation of Teachers, MFT, AFT, AFL-CIO, filed a
petition for an election whereby all substitute teachers em-
ployed by the Taylor Board of Education would be included in
the existing teacher bargaining unit. The Taylor Board of
Education objected to the substitute teachers being included in
the teacher bargaining unit. The Michigan Employment Rela-
tions Commission, following an evidentiary hearing before a
hearing officer, found that the substitute teachers shared a
sufficient community of interests with the teachers already in
the bargaining unit to warrant certification of a representation
election which would include all substitute teachers employed
by the Taylor Board of Education who were on the substitute
teacher list and had worked at least one day in at least twenty-
five percent of the pay periods in the prior two school years.
The Taylor Board of Education appealed.

The Court of Appeals *held:*

The determination of an appropriate collective bargaining
unit is one for the Michigan Employment Relations Commis-
sion to make. The commission's determination will not be
disturbed on appeal if it is supported by competent, material
and substantial evidence. The commission's determination that
the substitute teachers shared a sufficient community of inter-
ests with the members of the existing bargaining unit to
warrant including the designated substitute teachers within the
bargaining unit was appropriate and was supported by compe-
tent, material and substantial evidence.

Affirmed.

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 650 *et seq.,* 661, 674.
Determination of appropriate bargaining unit under sec. 9(b) of
National Labor Relations Act (29 USCS Sec. 159(b))—Supreme
Court cases. 83 L Ed 2d 1148.
Who may be included in "unit appropriate" for collective bargain-
ing at school or college, under sec. 9(b) of National Labor Rela-
tions Act (29 USCS sec. 159(b)). 46 ALR Fed 580.

1. LABOR RELATIONS — BARGAINING UNITS — PUBLIC EMPLOYMENT
   RELATIONS ACT — EMPLOYMENT RELATIONS COMMISSION.

   The determination of an appropriate collective bargaining unit is
   one for the Michigan Employment Relations Commission to
   make; where public employees are involved, such a determina-
   tion involves two inquiries: (1) which individuals are employees
   within the public employment relations act; and (2) what group
   within the class of employees shares a community of interests
   such that representation by a single bargaining agent will meet
   the statutory goal of assuring to employees the fullest freedom
   in exercising the rights guaranteed by the act (MCL 423.9e,
   423.201 et seq.; MSA 17.454[10.4], 17.455[1] et seq.).

2. LABOR RELATIONS — BARGAINING UNITS — APPEAL — EMPLOYMENT
   RELATIONS COMMISSION.

   A bargaining unit determination made by the Michigan Employ-
   ment Relations Commission should not be disturbed unless
   clearly unsupported by competent, material, and substantial
   evidence (MCL 423.23[2][e]; MSA 17.454[25][2][e]).

*Miller, Cohen, Martens & Ice, P.C. (by Mark H. Cousens),* for petitioner.

*Butzel, Long, Gust, Klein & Van Zile (by John P. Hancock, Jr., Carey A. DeWitt* and *Gloria A. Hage),* for respondent.

Amici Curiae:

*Miller, Canfield, Paddock & Stone by (Richard J. Seryak* and *Rita E. Thomas),* for Michigan Associa-
tion of School Boards and others.

*Foster, Swift, Collins & Coey, P.C. (by Stephen O. Schultz),* for Michigan Education Association.

Before: H. HOOD, P.J., and R. M. MAHER and
J. B. SULLIVAN, JJ.

PER CURIAM. Respondent, Taylor Board of Edu-
cation, appeals as of right from a determination of
the Michigan Employment Relations Commission

that the substitute teachers employed by the school system could be included in the same bargaining unit as the regular, full-time teachers represented by petitioner, Taylor Federation of Teachers, MFT, AFT, AFL-CIO.

On April 22, 1985, petitioner filed a petition for an election, seeking a certification election in which the substitute teachers would be able to vote on whether they were to be represented by petitioner. Following a hearing conducted on November 1, 1985, before a hearing officer, the MERC panel held that substitutes who worked a specific number of days could vote to be represented. The group entitled to vote was described as follows:

> All substitute teachers employed by the Taylor Board of Education on the employer's substituted [sic] list during the payroll period immediately preceding the direction of election who have worked at least one day in 25% or more of the pay periods in both of the full school years preceding the direction of election.

MERC acknowledged it was departing from prior precedent, namely: *Waterford School Dist,* 12 MERC Lab Op 697 (1977), and *Lansing School Dist,* 13 MERC Lab Op 453 (1978). In both cases, MERC had held that substitute teachers did not share the community of interests necessary to be represented by the same bargaining unit as regular, full-time teachers. However, in the instant case MERC stated it felt that the factors relied upon in those cases should no longer be determinative.

Pursuant to MCL 423.9e; MSA 17.454(10.4), the task of determining an appropriate collective bargaining unit is left to MERC. Such a determination involves two inquiries:

> The first question is which individuals are "em-

ployees" within the policy of the Act; the next is what group within the class of employees shares a community of interests such that representation by a single bargaining agent will meet the statutory goal of "assur[ing] to employees the fullest freedom in exercising the rights guaranteed" by the Act. [*Michigan Educational Support Personnel Ass'n v Southfield Public Schools,* 148 Mich App 714, 716-717; 384 NW2d 768 (1985).]

Further, it is well settled that the determination of an appropriate unit is a finding of fact which will not be overturned by this Court if supported by competent, material, and substantial evidence. *Id.,* p 717.

It is clear that the substitute teachers are public employees within the policy of the act. *Waterford, supra,* pp 701-702. Thus, the first inquiry has been met.

On appeal, respondent claims that MERC's conclusion that the substitutes share a community of interests with the full-time teachers was not supported by competent, material, and substantial evidence. We disagree. MERC made lengthy findings of fact, all of which are supported by the record. Testimony at the hearing revealed that the Taylor Board of Education maintains a list of approximately 125 substitutes. The substitutes apply for a position at the Taylor School District by submitting an application, their college transcript, and proof of a negative tuberculosis test. They are then placed on the substitute list. The personnel secretary of the board calls substitutes off this list every morning between 5:30 and 6:30 A.M. The substitute may refuse or accept the assignment. The large number of absences by the regular teachers results in practically every substitute being called every day.

In the 1984-85 school year, consisting of 180

days, fifty substitutes worked 1-45 days, thirty-one substitutes worked 46-91 days, twenty-four substitutes worked 92-136 days, and twenty worked 137-180 days. The length of the assignments vary. Richard Lininger, associate superintendent of personnel for the school district, testified that ninety-four percent of the assignments in the 1984-85 school year were for under three days. Only four of the substitutes were given assignments longer than sixty days. Of these, three, Alice Good, Kim Fields, and Ruth Winkler, testified at the hearing. Good testified that she taught fifth grade at Eurekadale Heights Elementary School from October 22, 1984, until the end of the school year. During this time, she prepared lesson plans, attended parent-teacher conferences, graded papers, graded report cards, and attended a teachers' workshop on computers. Fields testified that she taught from October 11, 1984, until the end of the school year. During this time, she also drew up lesson plans, acquired supplies, attended parent-teacher conferences, graded papers, and passed and failed students. Winkler testified that she substituted 120 days in the 1984-85 school year. She also made lesson plans, attended parent-teacher conferences, made entries in the students' permanent records, and passed and failed students.

At the end of the school year, all three witnesses received a letter reassuring them of a position as a substitute in the following year. However, Richard Lininger testified that the school district does not guarantee the substitutes teaching jobs, and the substitutes do not commit themselves either. The substitutes are free to have their names on the lists of other school districts and may have other employment. Lininger testified that the substitutes are not given a contract and receive no tenure. They receive no fringe benefits except that, in

accordance with MCL 380.1236; MSA 15.41236, if they spend more than sixty days in one specific teaching assignment, they are granted leave time and other privileges granted to the regular teachers. Lininger testified that substitutes do not have to be certified, while regular teachers do, and that regular teachers are required to make lesson plans, while the substitutes are not. While his office keeps track of which substitutes refuse assignments when called, refusal is not held against the substitute. The substitutes can take their name off the list at any time. Lininger testified that, substitutes may specify which days they prefer to work and may designate the grades and subjects they prefer to teach. Lininger further testified that, while regular teachers have a probationary period and undergo formal evaluation, substitutes do not. Substitutes are paid per diem at a rate of $40 per day, twice a month, while regular teachers are paid on a contractual basis. Regular teachers have payroll deductions, while substitutes do not. In addition, regular teachers have a grievance procedure, while substitutes do not.

Upon cross-examination, Lininger admitted that petitioner represents a wide variety of employees, including nurses, diagnosticians, social workers, and adult education teachers who teach leisure classes. He admitted that substitutes are expected to perform as professionals and are expected to be competent. He has terminated a substitute because of incompetence.

As previously noted, MERC's decision first set forth lengthy findings of fact, all of which were supported by the previous testimony. MERC then noted that in its previous decisions it had identified a number of factors as relevant to the determination of whether substitutes were merely "casual" employees: 1) whether the employees work

"on call" as opposed to a regular schedule; 2) whether the employees have a right to refuse assignments without penalty; 3) whether the employer guarantees the employees a minimum number of hours or days of work; 4) whether the substitutes themselves commit to being available for certain periods of time; 5) the duration of each substitute assignment; 6) whether the employees are permitted to work for another employer; and 7) differences or similarities between their wages and benefits and those of full-time employees.

MERC then stated:

> Although in cases such as *Waterford School District,* and *Jackson Public Schools, supra,* we relied on these factors to find substitutes to be casual employees, we are now convinced these factors by themselves do not demonstrate that the employee has no substantial and continuing interest in the wages, hours, and working conditions of full-time employees. As the NLRB noted in *Fresno Auto Auction, supra,* and as we found in *Southfield Public Schools* [19 MERC Lab Op 164 (1984), aff'd 148 Mich App 714 (1985)] the fact that an employee has the right to work intermittantly [sic] if he chooses may be outweighed by evidence that the employee in fact works regularly and does not often exercise his right to refuse work. Guarantees of work by the employer, or committments [sic] to work by the employee, may be factors indicating regular, as opposed to casual employment. However, such guarantees and committments [sic] are not necessarily a feature even of full-time employment and their absence does not necessarily signal casual status. This is also true of prohibitions against working for another employer. Differences in wages and benefits are an important factor to be considered in determining community of interest among groups of employees. However, we generally give this factor less weight when some of the employees are already represented by a collec-

tive bargaining representative and receive wages and benefits pursuant to a collective bargaining agreement.

With respect to the other traditional factors to be considered in determining community of interest, we have, as noted above, generally found professional employees whose primary job involves the instruction of students in a K-12 school district to share a community of interest based on similarities in job duties, education, and training. The record indicates that the substitutes who work only short-term assignments do not have the same responsibility for parent conferences, lesson plans, grades, etc. that generally fall on classroom teachers. However, a short-term substitute assignment may be more demanding in terms of other professional teaching skills than a long-term assignment. Although differences in hiring standards can be a factor in determining community of interest, the record shows here that in order to be placed on the substitute list a substitute must produce both references and a college transcript. No specific evidence was put into the record here regarding the factors of common supervision, integration of function, or day-to-day contact with bargaining unit members. We assume for purposes of this proceeding that these factors do not indicate a separate community of interest among substitutes.

In *Southfield, supra,* relied upon by the MERC, this Court affirmed a MERC decision which allowed substitute custodians to join the union representing full-time custodians. This Court found that the substitute custodians shared a sufficient community of interests with the regular custodians to be included in the union. This Court stated that the objective in designating bargaining units is to create the largest possible unit consistent with a community of interests of the membership. *Southfield,* 148 Mich App 718-719. This Court noted that the regular custodians and substitute custodians

performed essentially the same work in the same buildings under the same supervision and that work assignments were delegated in the same manner for both regular and substitute custodians. *Id.,* p 719.

Our sole determination is whether MERC's decision is supported by competent, material, and substantial evidence. In light of the due deference which we must give MERC's decision, we find we must affirm. The substitute teachers, while not working the same number of hours as regular teachers, are expected to fill the shoes of the regular teachers in the teachers' absence. The substitutes are expected to be professional in every manner, and, while in class, are expected to perform essentially the same jobs as regular teachers. MERC's decision to allow the accretion of substitute teachers was supported by the testimony of the witnesses.

Respondent also claims that MERC did not state its reasons for departure from precedent. MERC's reason for departure is apparent throughout the opinion. In addition, MERC stated that the factors relied upon in *Waterford School Dist* and *Lansing School Dist* should no longer be determinative. Thus, MERC stated sufficient reasons for departure.

Finally, respondent claims that the formula propounded by MERC to determine which substitutes can vote and which can not was not supported by competent, material, and substantial evidence. In light of the fact that neither party submitted a different formula, we feel the formula is an adequate one to distinguish the substitutes entitled to vote from the substitutes who are not entitled to vote.

Affirmed.