MECOSTA COUNTY BOARD OF COMMISSIONERS v MICHIGAN
COUNCIL 25, AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES, AFL-CIO

Docket Nos. 95106, 95107. Submitted October 20, 1987, at Lansing.
Decided February 16, 1988.

Michigan Council 25, American Federation of State, County and
Municipal Employees, AFL-CIO petitioned the Michigan Em-
ployment Relations Commission seeking a bargaining unit of
supervisory employees of Mecosta County, excluding all elected
officials. The union sought to include six county department
heads, equalization director, director of ambulance services,
environmental health director, director of nurses, building
maintenance supervisor, and building official, in the proposed
supervisory unit. MERC ruled that the six department heads
were neither executive nor confidential employees and that
they possessed supervisory authority and, therefore, should be
included in the supervisory bargaining unit. The Mecosta
County Board of Commissioners appealed alleging that MERC
erred by concluding that the equalization director and director
of ambulance services were not entitled to the executive exclu-
sion from collective bargaining.

In a second case, the board petitioned MERC for a unit clarifica-
tion concerning four nonsupervisory employees, the deputy
positions to the county register of deeds, county clerk, treasurer
and drain commissioner, contending that the four positions
were executive and confidential or, in the alternative, were at
least supervisory and should be included in the supervisory
unit sought by the union. MERC found no justification for

REFERENCES

Am Jur 2d, Administrative Law §§ 583 et seq.; 645 et seq.

Am Jur 2d, Labor and Labor Relations §§ 650 et seq.; 1764 et seq.;
1787 et seq.

What constitutes agency "action," "order," "decision," "final order,"
"final decision," or the like, within meaning of federal statutes
authorizing judicial review of administrative action—Supreme
Court cases. 47 L Ed 2d 843.

Who are supervisors for purposes of bargaining-unit determinations
in state public employment labor relations. 96 ALR3d 723.

Bargainable or negotiable issues in state public employment labor
relations. 84 ALR3d 242.

removing the four deputies from the nonsupervisory bargaining unit. The board appealed from that determination. The appeals were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. MERC made sufficient factual findings.

2. MERC's determination that the equalization director and the director of ambulance services were not executives and not entitled to the executive exclusion from collective bargaining is not supported by competent, material and substantial evidence on a review of the record as a whole. MERC's determination in this regard is reversed.

3. MERC's finding that the four deputy positions should not be included in the supervisory bargaining unit is not supported by substantial, competent and material evidence on the record as a whole. MERC's determination in this regard is reversed.

Affirmed in part and reversed in part.

M. J. KELLY, P.J., concurred with the majority in regard to the first and second holdings but disagreed with the third holding. He believes that MERC's determination that the four deputy positions are not supervisory is supported by competent, material and substantial evidence and he would affirm that part of MERC's decision.

1. ADMINISTRATIVE LAW — APPEAL — FINAL DETERMINATIONS.

A review of a final agency determination is limited to the record; final decisions must include findings of fact and conclusions of law.

2. LABOR RELATIONS — PUBLIC EMPLOYEES — COLLECTIVE BARGAINING UNITS.

The unit appropriate for collective bargaining purposes under the public employment relations act is to be determined by the Michigan Employment Relations Commission as provided in the Michigan labor mediation act (MCL 423.9e, 423.213; MSA 17.454[10.4], 17.455[13]).

3. LABOR RELATIONS — PUBLIC EMPLOYEES — COLLECTIVE BARGAINING UNITS — APPEAL.

The Michigan Employment Relations Commission's determination of a collective bargaining unit is a finding of fact which is conclusive if supported by competent, material and substantial evidence when reviewing the record as a whole (MCL 423.23[2][e]; MSA 17.454[25][2][e]).

4. LABOR RELATIONS — PUBLIC EMPLOYEES — COLLECTIVE BARGAINING UNITS — EXECUTIVE EXCLUSION.

The Michigan Employment Relations Commission has adopted a

case-by-case approach for determining whether the executive
exclusion, which precludes employees in executive positions
from being included in a bargaining unit which consists of
nonexecutive employees, applies.

5. LABOR RELATIONS — PUBLIC EMPLOYEES — EQUALIZATION DIRECTOR
    — COLLECTIVE BARGAINING UNITS — EXECUTIVE EXCLUSION.
    A person occupying a full-time position of county equalization
    director who performs essentially the same duties as a city
    assessor but on a county-wide scale is an executive precluded
    from being included in a collective bargaining unit which
    consists of nonexecutive employees (MCL 423.9[e]; MSA
    17.454[10.4]).

6. LABOR RELATIONS — PUBLIC EMPLOYEES — COLLECTIVE BARGAINING
    UNITS — SUPERVISORS.
    It is not the exercise of authority, but the delegation of authority,
    which is indicative of the attributes of a supervisor for purposes
    of determining supervisory collective bargaining units.

*Cohl, Salstrom, Stoker & Aseltyne, P.C.* (by *Bon-nie G. Toskey*), for Mecosta County Board of Commissioners.

*L. Rodger Webb, P.C.* (by *Miguel Ortiz*), for Michigan Council 25, AFSCME, AFL-CIO.

Before: M. J. KELLY, P.J., and DOCTOROFF and J. T. CORDEN,* JJ.

DOCTOROFF, J. In these two consolidatd cases, the Mecosta County Board of Commissioners appeals as of right from the decisions of the Michigan Employment Relations Commission that determined the appropriate collective bargaining unit for certain Mecosta County employees. We affirm in part and reverse in part.

On November 8, 1985, Michigan Council 25, American Federation of State, County and Municipal Employees, AFL-CIO petitioned MERC seeking a bargaining unit of supervisory employees of the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

county, excluding all elected officials. The union sought to include county department heads in the proposed supervisory unit. The board requested a hearing to determine whether the positions sought to be included by the union should be considered executive or confidential and therefore excluded from collective bargaining rights. Following the parties' stipulations, six department head positions were at issue: equalization director, director of ambulance services, environmental health director, director of nurses, building maintenance supervisor, and building official.

MERC ruled that the six department heads were neither executive nor confidential employees. MERC noted that although the department heads did not possess sufficiently broad responsibility and autonomy over a department composed of a large number of employees to raise an issue as to their executive status, the record did establish that all six of the department heads possessed supervisory authority and therefore should be included in the supervisory bargaining unit. The appeal from that decision concerns only two of the six department heads.

On January 14, 1986, the board in a second case petitioned MERC for a unit clarification concerning four nonsupervisory employees. The four are deputy positions to the county register of deeds, county clerk, treasurer and drain commissioner. The board contended that the four positions were executive and confidential or, in the alternative, were at least supervisory and should be included in the supervisory unit sought by the union.

MERC found that all four of the individuals were the chief deputies in their particular offices and substituted for the elected officials when they were absent, but found that fact insufficient to confer supervisory or executive status on them. MERC

found no justification for removing the deputies from the nonsupervisory bargaining unit and determined that the deputies should remain as part of that unit. The two matters were consolidated for appeal.

I

The board's first claim of error is that MERC made insufficient findings of fact to support its conclusions and ignored testimony in reaching its findings.

A review of the final agency determination is limited to the record; final decisions must include findings of fact and conclusions of law. See *Human Rights Party v Michigan Corrections Comm,* 76 Mich App 204; 256 NW2d 439 (1977), lv den 402 Mich 906 (1978).

In this case, MERC made sufficient factual findings. In a ten-page decision, MERC recounted the testimony, found facts, stated the bases for the conclusions drawn from the facts and supported its conclusions with citations to legal authority. MERC has made an adequate record for this Court to review.

II

The board next asserts that MERC erred by concluding that the equalization director and director of ambulance services, the two remaining county department heads, were not entitled to the executive exclusion from collective bargaining.

Pursuant to § 13, MCL 423.213; MSA 17.455(13), of the public employment relations act, the "unit appropriate" for collective bargaining purposes is to be determined by the MERC as provided in § 9e of the Michigan labor mediation act, MCL 423.9e; MSA 17.454(10.4). *Michigan Education Ass'n v*

*Clare-Gladwin Intermediate School Dist,* 153 Mich App 792, 795; 396 NW2d 538 (1986).[1] The determination of a collective bargaining unit is a finding of fact. *Michigan Educational Support Personnel Ass'n v Southfield Public Schools,* 148 Mich App 714, 717; 384 NW2d 768 (1985). A finding of fact shall be conclusive if supported by competent, material and substantial evidence when reviewing the record as a whole, MCL 423.23(2)(e); MSA 17.454(25)(2)(e). *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 121; 223 NW2d 283 (1974). Substantial evidence is more than a scintilla but substantially less than a preponderance. *Tocco v Marquette Prison Warden,* 123 Mich App 395, 402; 333 NW2d 295 (1983).

The executive exclusion is based upon MERC's power to delineate appropriate bargaining units. It precludes employees in executive positions from being included in a bargaining unit which consists of nonexecutive employees. *UAW v Sterling Heights,* 163 Mich App 8; 413 NW2d 716 (1987). MERC has adopted a case-by-case approach for determining whether the executive exclusion applies. *Detroit Dep't of Transportation v Detroit DOT Foreman's Ass'n,* 109 Mich App 141, 143; 311 NW2d 319 (1981), lv den 413 Mich 902 (1982), states:

---

[1] MCL 423.9e; MSA 17.454(10.4) provides:

The commission, after consultation with the parties, shall determine such a bargaining unit as will best secure to the employees their right of collective bargaining. The unit shall be either the employees of 1 employer employed in 1 plant or business enterprise within this state, not holding executive or supervisory positions, or a craft unit, or a plant unit, or a subdivision of any of the foregoing units. If the group of employees involved in the dispute was recognized by the employer or identified by certification, contract, or past practice, as a unit for collective bargaining, the commission may adopt that unit.

In deciding whether a job title occupies executive status, the commission may consider several factors, such as who has primary responsibility for developing the budget, who plays a significant role in preparing departmental rules and regulations, the number of executive positions relative to the size of the organization, the degree of interchangeability of functions between the employee and his immediate superior, and the degree of participation in labor negotiations or formulation of collective-bargaining policy.

1. *Equalization Director.* A county board of commissioners is required to establish a department to assist it in the matter of equalization of assessments; equalization directors are appointed by the county board of commissioners itself. MCL 211.34(3); MSA 7.52(3). Testimony indicated that the equalization director of Mecosta County works full time under the direction and supervision of the board of commissioners and he, in turn, supervises a total of five employees: three assessors and two clerks. He is fully responsible for submitting the budget for his department to the board of commissioners. The record indicates that his primary duty is creating equity between or equalizing various entities, sixteen townships and the City of Big Rapids, in regard to tax assessments. Assessors in each of the sixteen townships are responsible to him and receive advice and counsel from him. The position of equalization director is closely connected with the county budget since assessments affect the state equalized value (SEV) of property. The role of the equalization director has a direct impact on the source of funding because his decisions on assessing and how he conducts the affairs of his office help to determine what the SEV is going to be. The SEV is critical to the county because it forms the tax base—when multiplied by

the millage, the total tax dollars can be computed. Tax funding from real and personal property is one of the county's major sources of funding— slightly over fifty percent of the total budget.

In *United Steelworkers of America v Frankfort*, 153 Mich App 352; 395 NW2d 318 (1986), this Court affirmed MERC's determination that the executive exclusion did not apply to a part-time city assessor. However, the Court explained:

> However, had Margaret Sanders been a full-time city assessor, we would not hesitate "to rule as a matter of law," that she should "be excluded from a bargaining unit as an executive." In our opinion, a person occupying a full-time position of assessor and responsible for performing the statutory and charter duties of city assessor is an "executive" under § 9e of the public employment relations act. MCL 423.9(e); MSA 17.454(10.4). No position in city government is more intimately related to policy-making than the assessor's. Anticipated revenues are largely based on the assessments of real and personal property made by the assessor's office. In turn, the revenues become the base upon which a city budget is made.
>
> Accordingly, we disagree with *Berlin Twp*, 1983 MERC Lab Op 1054, to the extent that it stands for a rule that the exercise of the statutory duties of an assessor will not make an employee an executive under PERA. In situations where the position is a full-time position, we believe that the exercise of such statutory duties, whether personally performed or performed by others under the supervision of the assessor, does make the assessor an "executive." [*Id.*, pp 354-355.]

The equalization director in this case performs essentially the same duties as a city assessor but on a county-wide scale. We believe that the rationale articulated in *Frankfort* applies with equal force to a full-time county equalization director.

Accordingly, we find MERC's determination that the equalization director was not an executive to be unsupported by competent, material and substantial evidence.

2. *Director of Ambulance Services.* MERC concluded that the director of ambulance services was neither an executive nor a confidential employee. Specifically, MERC found:

> The director of ambulance services is in charge of the County ambulance department, which provides emergency services in the County. The full time employment complement of the department is composed of ten attendants, who are in a separate chapter of Local 1865, and two secretarial employees who are unrepresented. The department also has a large number of volunteers, which bring its employment complement to thirty or more. The ambulance department is in a separate location from the courthouse, approximately one mile away. *Similar to the other department heads involved herein, the ambulance director may consult with the Employer's negotiating team in regard to matters affecting his employees, and he may on occasion sit at the bargaining table itself.* Next to the sheriff department the ambulance department is the largest department in the County. [Emphasis supplied.]

These findings relative to the director of ambulance services regarding negotiations are unsupported by the record. Charles Randolph, administrative assistant to the commissioners, testified that the director sits at the negotiating table with the ambulance attendants' bargaining unit. The ambulance director had been at every negotiating session in the present series of negotiations, and was the only department head who actually participated on the negotiating team on behalf of the county board of commissioners. Nowhere does the

record indicate that other department heads sat at the bargaining table on occasion, but the record does reflect that the board met with department heads to discuss the contract language and to see whether there were any clauses with which their departments had particular problems.

Testimony also showed that policy making was, as a whole, left to the director of ambulance services due to the technical nature of his position. While the board of commissioners makes the final determination in setting policy, the definition of executive encompasses employees who exercise broad discretion, even if it is only in regard to effectuating management policy. *Detroit DOT Foreman's Ass'n, supra,* p 143.

In this case, the director's participation in the negotiating process, coupled with his authority to set and effectuate policy, supports a finding that he was an executive. Therefore, MERC's conclusion that he was not an executive is not supported by competent, material and substantial evidence on a review of the record as a whole. *Detroit Symphony, supra,* p 121.

We note that the board requested that the election which included the equalization director and director of ambulance services be treated as null and void. As the board has offered no authority to support this position, we do not address it. See *Kent Co Education Ass'n v Cedar Springs Public Schools,* 157 Mich App 59, 65; 403 NW2d 494 (1987).

III

The board's final claim of error is that MERC's finding that the four deputy positions should not be included in the supervisory bargaining unit is unsupported by the record. Specifically, MERC

found that the fact that deputies substitute for elected officials has consistently been held to be insufficient to confer supervisory or executive status on them. See *Shiawassee Co v Shiawassee Co Management & Supervisory Employees Ass'n,* 1983 MERC Lab Op 882, 887-889; *Presque Isle Co Board of Comm'rs v Michigan Council 25, AFSCME,* 1978 MERC Lab Op 1309, 1315; *Alpena Co Comm'rs v United Stone & Allied Products Workers of America, AFL-CIO,* 1970 MERC Lab Op 731, 737-739. Plaintiff argues that federal law interpreting the National Labor Relations Act should serve as persuasive authority for determining whether the deputies are supervisors. See *Kalamazoo City Education Ass'n v Kalamazoo Public Schools,* 406 Mich 579, 593; 281 NW2d 454 (1979).

In *Clare-Gladwin School Dist, supra,* a panel of this Court discussed the meaning of the term "supervisory" before concluding that an employee who held the position of coordinator/consultant was a supervisor. The panel first noted that the term "supervisor" has not been defined under the Michigan labor mediation act or the public employment relations act and that there was a void in Michigan precedent concerning a judicial definition of "supervisor" or "supervisory." The Court then examined federal labor relations law as persuasive authority for determining whether an employee is a supervisor:

> "Supervisors" are defined in the Labor Management Relations Act, 29 USC 152(11):
>
> "(11) The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the forego-

ing the exercise of such authority is not of a
merely routine or clerical nature, but requires the
use of independent judgment." [*Id.,* p 797.]

Federal courts, the panel noted, have consistently
held that the existence of any one of these statu-
tory powers, regardless of the frequency of its
exercise, is sufficient to confer supervisory status
on an employee, as long as the existence of the
power is real rather than theoretical. *Id.*

> Said another way, it is not the exercise of au-
> thority, but the delegation of authority, which is
> indicative of the attributes of a "supervisor." [*Id.*]

In this case, testimony indicated that the deputy
register of deeds works with the register of deeds
and one clerical employee. The deputy runs the
office in the register's absence. The deputy can
exercise the same statutory powers and, on the
occasions when the register is absent, the deputy
can terminate employees, oversee the clerical em-
ployee's work, and authorize overtime. The deputy
has input into the hiring and termination process,
and also discusses with the register certain policies
aimed at better accomplishing the workload. The
deputy may also have occasion to have direct
interaction with the board of commissioners.

The chief deputy county clerk is also the deputy
clerk of the circuit court and substitutes for the
county clerk in the clerk's absence. The chief
deputy is one of five full-time employees who
works under the clerk. There is also one part-time
employee. The deputy organizes jobs, trains new
employees, works with the clerk to ensure a
smooth work flow, advises the clerk when work
problems arise, and advises the clerk when office
materials must be ordered. The deputy has input
into the hiring process and may supervise employ-

ees, but does not have the power to terminate employees. The deputy may approve vacations and overtime and may step in to record the minutes of board meetings in emergency situations. Whenever both the clerk and the chief deputy clerk are absent, one of the other employees takes over the clerk's duties.

The deputy treasurer substitutes for the treasurer when necessary. In the absence of both the treasurer and the deputy, another employee runs the office. The deputy keeps files, does the payroll, and makes deposits. Additionally, the deputy assigns work to two other employees and may authorize overtime. The deputy has input into hiring and disciplining employees and may, on occasion, communicate directly with the board of commissioners.

The deputy drain commissioner works four days a week and substitutes for the commissioner in his absence. The deputy can assign work to the office's other employee, who works part-time doing clerical work. The deputy has input into hiring, supervising and disciplining employees as well as input into the preparation of the budget to the county. Additionally, the deputy acts as secretary to the drain board.

We find that the cases relied upon by MERC for its determination that the deputies are not supervisors are distinguishable from the present case. In those cases, there was no evidence that the deputies found not to be supervisors had been delegated authority to perform supervisory functions such as hiring, disciplining or terminating employees. See *Shiawassee Co, supra,* pp 887-889; *Presque Isle Co, supra,* p 1315; *Alpena Co, supra,* pp 737-739.

In this case, however, the four deputies had been delegated authority to supervise, hire, discipline or discharge other employees. It is this delegation of

authority which is indicative of the attributes of a supervisor. *Clare-Gladwin School Dist, supra,* p 797. Pursuant to this definition, the four Mecosta County deputies are supervisors and should be included in the supervisory bargaining unit.

Accordingly, we find that MERC's findings that the deputies are not supervisors are not supported by substantial, competent and material evidence on the record as a whole.

Affirmed as to issue I; reversed as to issues II and III.

J. T. CORDEN, J., concurred.

M. J. KELLY, P.J. *(concurring in part and dissenting in part).* I concur in the result reached in Parts I and II of the majority opinion. However, because I agree with the MERC's determination that the four deputy positions should not be included in a supervisory bargaining unit, I dissent from Part III of the majority opinion.

"Determination of a collective bargaining unit is a finding of fact, not to be overturned by this Court if it is supported by competent, material and substantial evidence." *UAW v Sterling Heights,* 163 Mich App 8, 11; 413 NW2d 716 (1987).

The determination by MERC that the four deputy positions are not supervisory is supported by competent, material and substantial evidence. The four positions are not supervisory in nature. All four departments are very small. The record indicates that the offices interwork on a rather informal basis. There was testimony that the deputy to the register of deeds and the clerical help in that office perform some of the same duties. The duties of the deputies, the independent judgment they exercise and the direction they give others does not reflect their supervisory status, but merely

reflects their status as senior and experienced employees.

For these reasons, I believe that the finding of fact that the four deputies could be included in the nonsupervisory bargaining unit was supported by competent, material and substantial evidence, and I would affirm that part of the commission's decision.