POLICE OFFICERS ASSOCIATION OF MICHIGAN v CITY OF
GROSSE POINTE FARMS

Docket Nos. 132353, 132787. Submitted May 21, 1992, at Lansing.
Decided September 1, 1992; approved for publication January
12, 1993, at 9:05 A.M.

The Police Officers Association of Michigan petitioned the Em-
ployment Relations Commission for a clarification of the compo-
sition of the collective bargaining unit for supervisors trained
for both police and fire duties in the City of Grosse Pointe
Farms Public Safety Department following the consolidation of
the city's police and fire departments. Before the consolidation,
the association, in separate bargaining units, had represented
nonsupervisory officers of the police department and all fire
fighters except the fire chief, and the Fraternal Order of Police
had represented command officers of the police department.
The commission rejected the association's assertion that only
one bargaining unit comprised of all public safety officers
except the director was authorized under MCL 423.213; MSA
27.455(13), and decided that two bargaining units were appro-
priate, one for command officers with continued representation
by the Fraternal Order of Police and another for all other
public safety officers to be represented by the association. The
city and the association appealed. The appeals were consoli-
dated.

The Court of Appeals held:

1. Pursuant to the public employment relations act, MCL
423.9e; MSA 17.454(10.4), the Employment Relations Commis-
sion generally should not include supervisory personnel with
nonsupervisory personnel in certifying a collective bargaining
unit. However, when the public employees in question are in a
public safety department that is in part engaged in fire protec-
tion, MCL 423.213; MSA 17.455(13) provides that employees
who, as in this case, are subordinate to the public safety
director are not to be deemed supervisors. While § 13 defines
supervisory personnel differently in the case of such employees,

REFERENCES
Am Jur 2d, Labor and Labor Relations § 1768.
See ALR Index under Labor and Employment.

it does not require, as the association asserted, that there be but one bargaining unit for the department.

2. The commission did not clearly err in determining that the command officers should remain in a separate bargaining unit represented by the Fraternal Order of Police. The determination was authorized under MCL 423.9e; MSA 17.454(10.4), which provides that if a group of employees was recognized by the employer or identified by certification, contract, or past practice, as a unit for collective bargaining, the commission may adopt the unit.

3. The commission clearly erred in determining that the former fire chief should be included in the bargaining unit represented by the association. The city did not receive adequate notice of the association's intention to seek inclusion of the former fire chief.

Affirmed in part and reversed in part.

LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — COLLECTIVE BARGAINING UNITS — PUBLIC SAFETY DEPARTMENTS.

The provision of the public employment relations act that employees of a public safety department engaged in whole or in part in fire protection who are subordinate to the director of the department are not to be deemed supervisory personnel for purposes of determining a collective bargaining unit does not require that there be only one collective bargaining unit for employees trained for fire protection duties (MCL 423.213; MSA 17.455[13]).

*Frank A. Guido,* General Counsel, and *Stephen P. Whitaker,* Assistant General Counsel, for Police Officers Association of Michigan.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Timothy H. Howlett* and *Eric J. Pelton*), for City of Grosse Pointe Farms.

*John A. Lyons, P.C.* (by *Kenneth W. Zatkoff*), for Fraternal Order of Police.

Before: DOCTOROFF, C.J., and JANSEN and CORRIGAN, JJ.

PER CURIAM. In these consolidated appeals, the

Police Officers Association of Michigan (POAM) and the City of Grosse Pointe Farms appeal as of right from an August 10, 1990, decision and order concerning unit clarification entered by the Employment Relations Commission. We affirm in part and reverse in part.

The POAM first contends that the MERC erred as a matter of law in its interpretation and application of § 13 of the public employment relations act, MCL 423.213; MSA 17.455(13). The POAM asserts that it is clear from the face of the statute that its purpose is to ensure that all employees performing fire fighting duties are deemed nonsupervisory personnel in order that they might be included in the same bargaining unit. It is the POAM's position that the MERC erred in failing to establish one bargaining unit consisting of all members of the public safety department, excluding only the public safety director. We are of the opinion that the MERC did not err in concluding that § 13 of the PERA did not prohibit multiple bargaining units within the public safety department that are based on considerations other than supervisory status.

Section 13 provides as follows:

> The commission shall decide in each case, to insure public employees the full benefit of their right to self-organization, to collective bargaining and otherwise to effectuate the policies of this act, the unit appropriate for the purposes of collective bargaining as provided in section 9e of Act No. 176 of the Public Acts of 1939, as amended, being section 423.9e of the Michigan Compiled Laws: *Provided, That in any fire department, or any department in whole or in part engaged in, or having the responsibility of, fire fighting, no person subordinate to a fire commission, fire commissioner, safety director, or other similar administrative agency or administrator, shall be deemed to be a supervisor.* [Emphasis added.]

Section 13 is clearly applicable to a public safety department in which police and fire protection functions have been combined. Additionally, MCL 423.9e; MSA 17.454(10.4), referred to in § 13 above, provides as follows:

> The commission, after consultation with the parties, shall determine such a bargaining unit as will best secure to the employees their right of collective bargaining. The unit shall be either the employees of 1 employer employed in 1 plant or business enterprise within this state, *not holding executive or supervisory positions,* or a craft unit, or a plant unit, or a subdivision of any of the foregoing units. If the group of employees involved in the dispute was recognized by the employer or identified by certification, contract, or past practice, as a unit for collective bargaining, the commission may adopt that unit. [Emphasis added.]

When read together, the meaning of the above two provisions is clear. Generally, supervisory employees are not included in the same bargaining unit as nonsupervisory personnel. *Detroit Bd of Ed v Council 25, AFSCME,* 1978 MERC Lab Op 1140, 1143; *Labor Council, Michigan Fraternal Order of Police v Emmett Twp,* 182 Mich App 516, 518; 452 NW2d 851 (1990). However, an exception has been created for fire fighters in MCL 423.213; MSA 17.455(13). *Emmett Twp,* p 518. "The clear intent of the Legislature is to not exclude from a collective bargaining unit those employees who are subordinate to a director of a public safety department which is, at least in part, responsible for fire fighting, simply because those employees possess supervisory authority." *Id.*

Section 13 has changed the definition of supervisor for these employees so that fire fighting employees with supervisory status may be included in

the same bargaining unit with nonsupervisory employees. However, there is nothing on the face of the statute that requires that bargaining units be composed of both supervisory and nonsupervisory personnel. Section 13 simply redefines "supervisor" when fire fighting employees are involved, and prevents exclusion from a bargaining unit solely on the basis of supervisory status or authority. *Id.; City of Saginaw v Saginaw Fire Fighters Ass'n,* 1984 MERC Lab Op 1167, 1173; *City of Marysville v Marysville Fire Fighters Ass'n,* 1980 MERC Lab Op 90, 95. "The relevant position of Section 13 does not address itself to the determination of unit as such but only precludes the Commission from finding certain classifications to be supervisory . . . other reasons for noninclusion can be considered." *Id.*

We reject the POAM's argument that the statute requires all fire fighting employees who are not supervisors as defined in the statute to be included within the same bargaining unit. The language of the statute is clear and unambiguous, and does not require such a result. Section 13 only prohibits exclusion based solely on supervisory status or authority, and other reasons for noninclusion within a given bargaining unit can be considered. The MERC did not err in determining that § 13 does not prohibit multiple bargaining units within a public safety department when such units are based on considerations other than supervisory status or authority. The statute clearly prohibits exclusion based solely on supervisory status or authority, but does not mandate the creation of bargaining units with both supervisory and nonsupervisory fire fighting personnel. The MERC did not err in interpreting the statute.

The POAM next contends that the MERC erred in concluding that, because of bargaining history and

community of interest considerations, it was appropriate for the command officers to belong to a separate bargaining unit, distinct from the other nonsupervisory public safety personnel. We disagree with the POAM.

The determination of an appropriate bargaining unit is a question of fact. *Muskegon Co Professional Command Ass'n v Muskegon Co,* 186 Mich App 365, 374; 464 NW2d 908 (1990). Findings of fact by the commission are conclusive if supported by competent, material, and substantial evidence on the whole record. *Id.,* p 368. This Court will reverse a MERC determination of an appropriate bargaining unit only upon a clear showing of error. *Id.,* p 374; *Emmett Twp,* p 518.

In the present case, the MERC's determination that the command officers should remain in a separate bargaining unit represented by the Fraternal Order of Police (FOP) does not reveal a clear showing of error. Pursuant to the PERA, the commission shall determine the composition of appropriate bargaining units, MCL 423.213; MSA 17.455(13), in accordance with the requirements of MCL 423.9e; MSA 17.454(10.4). *Emmett Twp,* p 518. MCL 423.9e; MSA 17.454(10.4) provides, in part, that the commission shall determine such a bargaining unit as will best secure to the employees their right of collective bargaining and that "[i]f the group of employees involved in the dispute was recognized by the employer or identified by certification, contract, or past practice, as a unit for collective bargaining, the commission may adopt that unit."

The statute provides that if a group of employees has been recognized as a unit in the past, the commission may establish a bargaining unit consisting of those employees. In the present case, the MERC based its decision, in part, on the bargaining

history between the city and the command officers, and the fact that there was a collective bargaining agreement between the city and the FOP in effect until 1992. The language of MCL 423.9e; MSA 17.454(10.4) allows an employer to recognize a bargaining unit on the basis of labor-management relations history. See *Hosp Employees' Division of Local 79 v Flint Osteopathic Hosp,* 43 Mich App 237, 241-242; 204 NW2d 76 (1972), rev'd on other grounds 390 Mich 635; 212 NW2d 897 (1973). It is appropriate for the commission to consider bargaining history when determining appropriate bargaining units. *Buena Vista School Dist v Buena Vista Ed Ass'n,* 1982 MERC Lab Op 377, 382; *Macomb Co v Macomb Co Deputy Sheriff's Ass'n,* 1979 MERC Lab Op 183, 187. The commission has consistently resisted disrupting established bargaining relationships. *Genesee Co v Council 29, AFSCME,* 1978 MERC Lab Op 552, 556; *Midland v Midland Municipal Employees Ass'n,* 1978 MERC Lab Op 333, 336.

In designating appropriate bargaining units, the commission's primary objective is to constitute the largest unit that, under the circumstances of the case, would be most compatible with the effectuation of the purposes of the law and would include in a single unit all common interests. *Muskegon, supra,* p 373. The touchstone of an appropriate bargaining unit is a common interest of all its members in the terms and conditions of their employment that warrants inclusion in a single bargaining unit and the choosing of a bargaining agent. *Id.* A community of interests includes, among other considerations, similarities in duties, skills, working conditions, job classifications, employee benefits, and the amount of interchange or transfer of employees. *Mid-Michigan Dist Health*

*Dep't v Teamsters Local 214,* 1980 MERC Lab Op 477, 482.

In the case at bar, the command officers unit has been in existence as an association since 1966, and the FOP has represented the command officers as the sole bargaining agent of the unit since 1979. Although the command officers are also trained as fire fighters, they enjoy the same working conditions as they did before the consolidation of the police and fire departments into the public safety department. In light of the bargaining history and the community of interests shared by the command officers, it is appropriate that the command officers comprise a separate bargaining unit. We conclude that the MERC's findings of fact were supported by competent, material, and substantial evidence, and its determination that the command officers comprise a separate bargaining unit represented by the FOP does not evidence a clear showing of error. *Muskegon, supra, Emmett Twp, supra.*

The city argues on appeal that the MERC erred in determining that the former fire chief, who was not trained for police work or made part of the POAM's unit clarification petition, should be included in the public safety bargaining unit represented by the POAM. The MERC held that the former fire chief was no longer a supervisor pursuant to § 13 of the PERA and, therefore, should be included within the public safety bargaining unit. The MERC stated that, "as there was no reason, other than a supervisory status brought up at the hearing, which would indicate that the position has such a dissimilar community of interest with other public safety personnel so as to persuade the Commission that the Fire Chief should be separately represented or excluded from representa-

tion," the former fire chief would be included within the unit represented by the POAM.

The record indicates that the unit clarification petition sought clarification for all supervisors who were trained both for police and fire duties. Additionally, because the fire chief was not trained for both fire and police work, and therefore not thought to be included within the unit clarification petition by the city, the city was not prepared to offer evidence in support of its claim that the fire chief should not be included in the same bargaining unit as the other nonsupervisory public safety personnel. The only testimony elicited at the hearing concerning the fire chief was that he was subordinate to the director of public safety.

The city objected to the fire chief's inclusion in the petition at the hearing, but did not present any evidence regarding the inappropriateness of including him in the bargaining unit represented by the POAM because it did not anticipate the issue as one being raised in the petition. Therefore, because of inadequate notice, the city was precluded from establishing a basis for noninclusion in the public safety bargaining unit represented by the POAM, such as bargaining history or community of interests. Viewed in this light, we conclude that the MERC's decision was not supported by competent, material, and substantial evidence. *Muskegon, supra, Emmett Twp, supra.* The MERC erred in adding the fire chief to the public safety officers' bargaining unit represented by the POAM.

The decision of the MERC is affirmed in part and reversed in part.