# STATE OF MICHIGAN

# COURT OF APPEALS

FAUST PUBLIC LIBRARY,

Respondent-Appellant,

v

AFSCME COUNCIL 25,

Charging Party-Appellee.

FOR PUBLICATION
July 23, 2015
9:00 a.m.

No. 318467
MERC
LC No. 12-000981

Before: JANSEN, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Respondent Faust Public Library ("Library") appeals by right the decision and order of the Michigan Employment Relations Commission ("MERC"), concluding that the position held by librarian Lisa Hausman as the head of the Library's children's services department did not qualify as a statutory supervisor and, therefore, that the challenged ballot cast by Hausman in a union representation election would be opened and counted with the election results. The Library also challenges the MERC's refusal to permit the Library to pursue an alternative claim that if the head of the children's services department is a nonsupervisory position, then the heads of two other departments of the Library, the adult services and circulation departments, are also nonsupervisory positions such that the challenged ballots cast by the employees holding those two positions should also be opened and counted. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

As explained in *Macomb Co v AFSCME Council 25*, 494 Mich 65, 77; 833 NW2d 225 (2013) (quotation marks and citations omitted):

> In a case on appeal from the MERC, the MERC's factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record. Legal questions, which include questions of statutory interpretation and questions of contract interpretation, are reviewed de novo. As a result, an administrative agency's legal rulings are set aside if they are in violation of the constitution or a statute, or affected by a substantial and material error of law.

We first address and reject the Library's contention that there was not competent, material, and substantial evidence to support the MERC's finding that the head of the children's services department is a nonsupervisory position.

The MERC's classification of an employee as supervisory or nonsupervisory involves findings of fact. See *Police Officers Ass'n of Mich v Fraternal Order of Police, Montcalm Co Lodge No 149*, 235 Mich App 580, 586; 599 NW2d 504 (1999). "Findings of fact by the [MERC] are conclusive if supported by competent, material, and substantial evidence on the whole record. This Court will reverse a MERC determination of an appropriate bargaining unit only upon a clear showing of error." *Grosse Pointe Farms*, 197 Mich App at 735 (citations omitted).

"The Legislature has segregated supervisory and executive personnel from other personnel for purposes of collective bargaining." *Mich Ed Ass'n v Clare-Gladwin Intermediate Sch Dist*, 153 Mich App 792, 795; 396 NW2d 538 (1986); see also *Grosse Pointe Farms*, 197 Mich App at 733 ("Generally, supervisory employees are not included in the same bargaining unit as nonsupervisory personnel."). Because the term is not defined in the PERA,[1] this Court has utilized a federal statutory definition of "supervisor" as referring to one who has the authority

> "to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." [*Clare-Gladwin Intermediate Sch Dist*, 153 Mich App at 797, quoting 29 USC 152(11).]

"The existence of any one of these powers, regardless of the frequency of its exercise, is sufficient to confer supervisory status on an employee, as long as the power is real, rather than theoretical." *Muskegon Co*, 186 Mich App at 372. In other words, "it is not the exercise of authority, but the delegation of authority, which is indicative of the attributes of a 'supervisor.' " *Clare-Gladwin Intermediate Sch Dist*, 153 Mich App at 797.

In this case, the MERC concluded that the evidence showed that Hausman did not possess supervisory authority as the head of the children's services department. The MERC found that Hausman never disciplined an employee or recommended discipline, was not involved in hiring employees, and was never told that she was expected to participate in hiring, firing, or disciplining employees. The MERC found that Hausman's authority in the children's services department, including assigning work on children's programming, derived from her status as a professional librarian with a master's degree rather than from any labor-relations or human-resources authority.

We conclude that there was competent, material, and substantial evidence to support the MERC's determination that Hausman's position as the head of children's services was not supervisory. Hausman testified that she never hired or fired any employees, was never involved in disciplining any employees as the head of children's services, and never recommended any firings or suspensions. Hausman was not involved in interviewing or hiring a new page who was

---

[1] Public Employee Relations Act, MCL 423.201 *et seq.*

assigned to her in the children's department; the page was instead hired by the Library Director without consulting Hausman. Although the hours of two employees were increased after Hausman had recommended such an action, there is no evidence that Hausman's recommendations were adopted without independent investigation. Hausman's work as one of several rotating "supervisors in charge" of the Library did not establish that she was a supervisor, given that employees other than department heads also served as the rotating supervisor in charge, including an administrative assistant, a librarian, and the head of automation. Hausman acknowledged that her performance evaluations of employees in the children's department were used to determine whether an employee received a merit increase when there was no wage freeze in effect, but the Director determined what award or raise was warranted and never asked Hausman what raises should be given. Hausman testified that she was not consulted about raises for children's department associates when across-the-board raises were given in 2006. Although Hausman did set schedules for children's department employees before her layoff in 2009, she testified that upon her reinstatement in 2012 the other children's department employees had already established a work schedule, and Hausman merely "plugged" herself into the "holes of that." When children's department employees requested time off, they submitted a form to Hausman, who would check the schedule to make sure the goal of public service was being met and then pass the form on to the Library Director.

Sheila Collins, the Library Director, testified that she helped to write a description of the position of department head applicable to all three departments, and this description was approved by the Library Board on March 14, 2012. According to Collins, a department head runs the department, handles personnel and budgetary issues, manages the scheduling of employees, approves or disapproves requests for time off, and signs employees' time sheets. Collins's description of a department head's powers could reasonably be viewed as merely theoretical given that, as Collins acknowledged, there have been no hiring or disciplinary terminations or suspensions since she became the Director. Collins testified that Hausman had provided an e-mail concerning the number of employees needed for a 40-hour versus a 55-hour week, and that the Library Board chose a 40-hour week and adopted the department heads' recommendations as best it could within budgetary constraints. But Collins did not testify that the Library Board adopted Hausman's recommendation without independent investigation. We acknowledge that Collins testified that the rotating supervisors in charge have the authority to approve or disapprove an employee's request to leave early and to deal with an employee or patron problem immediately. However, as explained previously, employees other than department heads serve as supervisor in charge on a rotating basis. Collins stated that performance evaluations could affect whether an employee receives a raise if the budget allowed a raise. But as discussed, Hausman testified that she had never been asked what raises should be given and that she was not consulted about raises that were provided in 2006.

We conclude that there was competent, material, and substantial evidence that Hausman did not have authority to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees or to effectively recommend such action. We discern no basis to upset the MERC's determination that Hausman lacked supervisory status in her role as the head of the children's services department. The MERC did not err by determining that Hausman held a nonsupervisory position at the Library.

The Library next argues that the MERC erred by rejecting its alternative contention that the three department head positions must be deemed either supervisory or nonsupervisory in tandem, and that the Library should have been permitted to present evidence establishing that the duties and authority of the three department head positions are effectively identical. We agree with the Library to the extent that it contends it should have been permitted to present evidence concerning the adult services and circulation department head positions in the hearing before the administrative law judge ("ALJ").

The Library consistently maintained throughout the administrative proceedings that the three department heads were supervisors and that their ballots should not be opened, *but that in the alternative*, if any of the three department heads was determined not to be a supervisor, then all three of the department heads should be found not to be supervisors and all three ballots should be opened. The Library asserted that the evidence would show that all three department heads had the same essential job duties and responsibilities in their respective departments, and that the differences in their job descriptions were related to their specific departmental functions. Therefore, the Library argued, there was no basis for concluding that one department head was not a supervisor but that the other two department heads were supervisors.

The ALJ rejected the Library's argument on the ground that there was no triable issue or material dispute of fact concerning the supervisory status of the heads of the adult services and circulation departments, given that both the Library and Charging Party AFSCME Council 25 ("the Union") asserted that those two positions were supervisory. The Library was therefore precluded from presenting evidence concerning the duties and responsibilities of the heads of the adult services and circulation departments. The Library presented an offer of proof concerning the proposed testimony of Marilyn Kwik and Diane Mehl, the respective heads of the adult services and circulation departments, indicating their respective responsibilities in their departments. Following the hearing before the ALJ, the MERC found that the head of children's services was the only position with respect to which supervisory status was in dispute and that no evidence was presented to establish that the heads of adult services and circulation were supervisors.

We conclude that the MERC committed a material and substantial error of law in refusing to permit the Library to support its alternative contention. The Union and the Library agreed before the election that Kwik, Mehl, and Hausman could vote by challenged ballot and that the MERC would determine their eligibility to vote, if necessary. Under the MERC's rules, the MERC must determine the merits of any challenged ballot and decide whether the person casting the ballot is an eligible voter. Mich Admin Code, R 423.148(2) provides:

> An authorized observer, the commission, or the election agent, before the time the voter's ballot is cast, or before the time the ballots are counted in the case of a mail ballot election, may challenge for good cause the eligibility of any person to participate in the election. A person challenged as an ineligible voter shall be permitted to vote in secret, and the election agent shall set aside the ballot, with appropriate markings. *If it is determined by the commission or its election agent that the challenged ballot, or ballots, is decisive of the result, then the commission shall determine the merits of any challenged ballot and decide whether or not the person is an eligible voter.* [Emphasis added.]

-4-

Prior to the election, the MERC declared that all three department heads would "vote by challenged ballot" and that "[t]he inclusion or exclusion of the [votes of the three department heads] will be determined by the Commission if their ballots are determinative of the results of the election." Because these three challenged ballots would have been decisive, given that the remaining unchallenged ballots were evenly split on whether to approve representation by the Union, the MERC was obligated by Rule 423.148(2) to separately determine whether Hausman, Mehl, and Kwik were eligible voters.

The ALJ stated that there was no material issue of disputed fact concerning the supervisory status of the adult services and circulation department head positions because both the Library and the Union agreed that those positions were supervisory. In so ruling, however, the ALJ ignored that the Library's alternative argument disputed the supervisory status of all three department heads. In general, parties are permitted to plead inconsistent claims and facts in the alternative. See MCR 2.111(A)(2); *HJ Tucker & Assoc, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 561; 595 NW2d 176 (1999). Section 75 of the Administrative Procedures Act,[2] MCL 24.275, provides in relevant part that "[i]n a contested case the rules of evidence as applied in a nonjury civil case in circuit court shall be followed as far as practicable, but an agency may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." The ALJ identified no principled basis to exclude evidence offered in support of the Library's alternative argument that the three department head positions must be viewed in tandem as either all supervisory or all nonsupervisory. The Library sought to admit the testimony of Kwik and Mehl, the respective heads of the adult services and circulation departments, to establish that their duties were effectively identical to Hausman's duties, such that any determination that Hausman's position as the head of the children's services department is nonsupervisory should apply equally to Kwik's and Mehl's positions. As discussed in more detail below, while we disagree with the Library's position that the MERC should have considered all three department heads in tandem, we agree with its position that the MERC erred by precluding it from presenting evidence that was relevant to a disputed issue, i.e., the supervisory or non-supervisory status of Kwik and Mehl.

The MERC's refusal to consider the Library's alternative claim also constituted a failure to fulfill the MERC's statutory duty to determine the appropriate bargaining unit. The Legislature has delegated to the MERC the power to determine appropriate units for collective bargaining. MCL 423.213; *Muskegon Co Prof Command Ass'n v Muskegon Co*, 186 Mich App 365, 369; 464 NW2d 908 (1990).

> In designating appropriate bargaining units, the [MERC's] primary objective is to constitute the largest unit which, under the circumstances of the case, is most compatible with the effectuation of the purposes of the law and includes in a single unit all common interests. Consistent with this objective, the [MERC's] policy is to avoid fractionalization or multiplicity of bargaining units.

---

[2] MCL 24.201 *et seq*.

The touchstone of an appropriate bargaining unit is a common interest of all its members in the terms and conditions of their employment that warrants inclusion in a single bargaining unit and the choosing of a bargaining agent. This Court abides by the [MERC's] policy to constitute the largest bargaining unit compatible with the effectuation of the [Public Employment Relations Act]. [*Id.* at 373-374 (citations omitted).]

"A community of interests includes, among other considerations, similarities in duties, skills, working conditions, job classifications, employee benefits, and the amount of interchange or transfer of employees." *Police Officers Ass'n of Mich v Grosse Pointe Farms*, 197 Mich App 730, 736; 496 NW2d 794 (1992).

In this case, the MERC refused to consider the Library's proposed evidence with regard to the heads of adult services and circulation because it failed to recognize that the Library's alternative argument pertained to the status of those positions. In doing so, the MERC failed to properly exercise its statutory duty to determine the appropriate bargaining unit. The MERC is required to recognize the largest single unit that includes all common interests that warrant inclusion in a single unit. *Id.* If the evidence shows, as the Library asserts in its alternative argument, that the pertinent department heads are nonsupervisory, then excluding those department heads from the presumptive bargaining unit may result in fractionalization.

In sum, we find the MERC committed a substantial and material error of law in refusing to permit the Library to advance its alternative claim. We therefore vacate the portion of the MERC's decision that refused to consider the Library's alternative claim and remand for further proceedings. Because, as discussed in detail above, we affirm the MERC's decision as to Hausman and her vote will break the existing tie, the MERC on remand should first consider, consistent with Mich Admin Code R 423.148(2), whether Kwik's and Mehl's ballots are determinative of the election in light of Hausman's now-counted vote. If the two challenged ballots would be determinative, then the parties may present evidence concerning the duties and authority of Kwik and Mehl, the heads of adult services and circulation, respectively. After considering the evidence presented, the MERC shall determine whether the heads of adult services and circulation departments are nonsupervisory and therefore included within the appropriate bargaining unit such that their ballots should be opened and counted. We note, however, that whether those positions are supervisory should rise and fall on the facts pertinent to each position. In other words, the MERC should make determinations as to each position and should not be bound by the Library's assertion that the positions are to be considered in conjunction with each other and with Hausman. The MERC is to consider the merits of those two challenged ballots and decide whether each challenged individual is an eligible voter. See Mich Admin Code R 423.148(2). The Library has not cited any authority, nor have we found any, indicating that the three positions at issue must rise and fall collectively, rather than on the individual facts of each position. Indeed, if the positions are similar such that Kwik and Mehl share "a common interest" in "the terms and conditions of their employment" so as to warrant inclusion in a single bargaining unit, it would be based on the pertinent facts, not because the Library has declared it to be so.

With regard to Mehl, we note the Library argues that the MERC erred by ruling that Mehl was not in the presumptive bargaining unit regardless of whether she was a supervisor,

because she was not a librarian. This issue is not preserved. "Generally, an issue is not properly preserved if it is not raised before, addressed, or decided by the circuit court or administrative tribunal." *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). This issue was not the focus of the proceedings below; rather, it arises from a footnote in the MERC decision, stating: "As a non-librarian, it appears that even if she had not been a supervisor, Mehl would not have been included in the unit as it was defined by the consent election agreement." Despite this footnoted commentary, the issue was not *decided* by the MERC. For the reasons described earlier, the MERC declined to decide the issue whether Mehl and Kwik were included in the appropriate bargaining unit. The MERC's observation in a footnote that it *appears* that Mehl—a non-librarian—would not have been included in the bargaining unit as defined by the consent election agreement was not a *decision* that Mehl was excluded from the unit for that reason. Indeed, the MERC declined to reach the issue of Mehl's inclusion in the unit for the erroneous reason that Mehl's supervisory status was supposedly undisputed. The issue was not decided below and is not preserved. *Id*.

Moreover, because we are remanding for a continued hearing for the reasons addressed earlier, the failure to consider this issue will not result in manifest injustice. See *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 387; 803 NW2d 698 (2010). As discussed, no evidence concerning Mehl's job duties has yet been presented, and the record is not sufficiently developed to address whether she is properly included in the bargaining unit. Because the issue whether Mehl's status as a non-librarian affects her inclusion in the presumptive bargaining unit was neither litigated nor decided below, review of this issue is not appropriate or feasible at this juncture.

Lastly, we note that the MERC's decision contains inconsistent orders. The MERC concluded that Hausman's position as head of children's services did not qualify as a statutory supervisor and, therefore, her challenged ballot should be opened and counted with the election results. Yet, the MERC attached to its decision and order a document entitled "DIRECTION OF ELECTION" ordering that an election by secret ballot *be conducted* among the employees within the unit. The MERC identified no basis in its decision for ordering a new election, and we can discern no basis for holding another election; rather, the appropriate remedy based on the MERC's reasoning was, as the MERC itself initially stated, to open and count Hausman's ballot. Accordingly, we vacate the portion of the MERC's order directing that a new election be held.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, a public question having been involved.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Jane M. Beckering