*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW WILK,

        Plaintiff-Appellant,

v

THE STATE BANK and
RONALD JUSTICE,

        Defendants-Appellees.

UNPUBLISHED
August 18, 2022

No. 357707
Wayne Circuit Court
LC No. 20-11229-CD

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

Matthew Wilk worked as a commercial lender for The State Bank (TSB). TSB terminated Wilk's employment three weeks after he reported to his attorney that TSB had approved a retroactive reduction of fee-share incentive payments from 10% to 5%. Wilk's attorney threatened to report TSB's violation of the wages and fringe benefits act (WFBA), MCL 408.471, *et seq.* TSB claimed that it had simply contemplated amending or modifying the terms of its incentive compensation plan, but denied that any formal amendment or modification was made. TSB paid Wilk his 10% fee-share payment and then terminated him two days later.

Wilk asserted a claim under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, and an alternative claim for wrongful discharge in violation of public policy. Wilk pleaded that TSB's decision to retroactively reduce the fee-share compensation was actually made, approved, and already in effect. That is sufficient to state a WPA claim and survive summary disposition under MCR 2.116(C)(8). While discovery may result in evidence that defendants did not make any decisions or take any other acts to illegally reduce its employees pay prior to plaintiff's counsel's letter, summary disposition is improper under MCR 2.116(C)(8) and premature at this very early stage of litigation. Wilk has also sufficiently pleaded an alternative public-policy claim for being discharged because he exercised his well-established rights afforded under the WFBA. Accordingly, we reverse the trial court's grant of summary disposition to defendants on both of Wilk's claims.

# I. BACKGROUND

Wilk was employed as a Vice President and Commercial Lender with TSB from July 2017 to July 2020. During his tenure with TSB, Wilk received positive annual reviews and did not receive any negative feedback. Pursuant to the terms of a written incentive compensation plan, Wilk was to be paid a 10% "fee share" of loan origination and renewal fees collected on Small Business Administration (SBA) loans that he generated. This fee-share compensation was to be paid "in the quarter following collection."

In 2020, the federal government established the Paycheck Protection Program (PPP) through the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). As a result, TSB experienced a historic increase of SBA loan applications in the second quarter of 2020.[1] After the second quarter ended, TSB's board of directors allegedly decided to retroactively reduce the fee-share compensation from 10% to 5%. The reduction applied to SBA loans generated under the PPP in the second quarter ending June 30, 2020. Wilk's immediate supervisor informed him that the board of directors had approved the retroactive reduction, which was announced in a July 2, 2020 email.[2]

Wilk reported to his attorney that TSB had decided to retroactively reducing the fee-share compensation earned in the second quarter of 2020. On July 7, 2020, Wilk's attorney sent a letter to Ronald Justice, TSB's President and Chief Executive Officer, informing him that TSB's reduction of the fee-share compensation constituted a violation of the WFBA. Wilk's attorney threatened to file a complaint with the Department of Licensing and Regulatory Affairs (LARA)[3] if Wilk was not paid the full 10% fee-share compensation that he earned in the second quarter. In a July 27, 2020 letter to Wilk's attorney, TSB's counsel acknowledged that TSB contemplated amending or modifying the terms of the incentive plan. But TSB's counsel claimed that TSB had "not made any formal amendment or modifications" to the incentive plan. On July 29, 2020, TSB paid Wilk his full 10% fee-share earned during the second quarter. Two days later, TSB terminated Wilk without explanation.

---

[1] TSB allegedly collected nearly $7 million in fee revenue from SBA loans under the PPP in the second quarter of 2020.

[2] Wilk's exhibits on appeal include a copy of the July 2, 2020 email from Craig L. Johnson, a senior vice president and senior lender at TSB to a Thomas J. Barrett that discusses the reduced fee-share. However, this exhibit was not attached to Wilk's complaint. A motion under MCR 2.116(C)(8) must be decided on the pleadings alone. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). Wilk's complaint specifically references the email and its contents. For purposes of our review, we have only considered the allegations in the pleadings.

[3] Wilk references LARA throughout his pleadings, which is consistent with the WFBA's definition. See MCL 408.471(a). However, we note that the Wage and Hourly Division is part of the Department of Labor and Economic Opportunity (LEO), not LARA.

Wilk filed suit alleging claims under the Bullard-Plawecki Employee Right to Know Act, MCL 423.501, *et seq.*, the WPA, and, alternatively, that his discharge was against public policy.[4] In lieu of an answer to Wilk's second amended complaint, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(8). Defendants argued that TSB did not violate the law because the proposed fee-share reduction was not actually implemented. Defendants also asserted that the WPA preempted and precluded a public-policy claim. The trial court granted the motion. This appeal followed.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil*, 504 Mich at 159. "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *Id.* (emphasis in original). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id.* at 160. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id.*

"The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo." *Micheli v Mich Auto Ins Placement Facility*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356559); slip op at 3.

## III. WHISTLEBLOWERS' PROTECTION ACT

Wilk argues that he sufficiently pleaded a WPA claim for TSB's termination of his employment after he reported TSB's decision to retroactively reduce the fee-share compensation in violation of the WFBA. We agree.

The WPA "protects an employee who has reported, or is about to report, a violation or suspected violation of a law to a public body." *Pace v Edel-Harrelson,* 499 Mich 1, 6; 878 NW2d 784 (2016). The goals of the WPA are "to protect the integrity of the law by removing barriers to employee efforts to report violations of the law," and "to protect the public by protecting employees who report violations of laws and regulations." *Faulkner v Flowers*, 206 Mich App 562, 568; 522 NW2d 700 (1994). Because the WPA is a remedial statute, it is to be liberally construed to favor the persons the Legislature intended to benefit, specifically, those employees engaged in protected activity. *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 406; 572 NW2d 210 (1998).[5]

---

[4] The parties stipulated to the dismissal of the Bullard-Plawecki claim and Wilk was afforded leave to amend his complaint with regard to his WPA and public policy claims.

[5] "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written." *Honigman Miller*

MCL 15.362 provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state . . . to a public body . . . .

"To establish a prima facie case under MCL 15.362, a plaintiff must show that (1) the plaintiff was engaged in protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *Pace*, 499 Mich at 6 (quotation marks and citations omitted).

Here, our focus is on the first element – whether Wilk was engaged in "protected activity." " 'Protected activity' under the WPA consists of (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation." *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 399; 572 NW2d 210 (1998). "Reporting a '*suspected* violation of a law' is protected activity" under the WPA. *Debano-Griffin v Lake Co,* 486 Mich 938; 782 NW2d 502 (2010) (emphasis added). Wilk contends that he engaged in two types of protected activity: (1) he reported TSB's suspected violation of the WFBA to his licensed attorney,[6] and (2) he notified TSB that he was about to report the violation to the Wage and Hour Division. There is no dispute at to whether Wilk "reported" to his attorney or was "about to report" to the department. Rather, defendants argued, and the trial court agreed, that Wilk did not engage in "protected activity" under the WPA because his claim was based on future, planned, or anticipated acts as opposed to a violation that had already occurred.

Wilk's complaint alleges in pertinent part that "[o]n July 2, 2020, the TSB announced its decision to retroactively reduce the fee-share percentage that Commercial Lenders like Wilk earned" and that Wilk's supervisor informed him that the bank's board of directors "had 'approved' a decision to retroactively reduce the fee-share percentage . . . from 10% to 5%." According to the complaint, the decision was already made. And the decision "set in motion the accounting and other computations that were necessary to execute the illegal, lower fee-share

---

*Schwartz & Cohn LLP v City of Detroit,* 505 Mich 284, 294; 952 NW2d 358 (2020) (quotation marks and citations omitted).

[6] The parties do not dispute that Wilk's attorney, as a Michigan-licensed attorney, is a "public body" under the WPA. See MCL 15.361(d)(iv) (defining a "public body," in relevant part as any "body which is created by state or local authority or which is primarily funded by or through state or local authority, or any member or employee of that body"); *McNeil-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 22-3; 891 NW2d 528 (2016) (holding that a private attorney, as a member of the State Bar of Michigan, is a "public body" under the WPA).

payments by July 29, 2020." When considering a motion under MCR 2.116(C)(8), all factual allegations in the complaint must be accepted as true. *El-Khalil*, 504 Mich at 160.

Accepting Wilk's allegations as true, we conclude that he has sufficiently pleaded a WPA claim. Wilk alleged that TSB's board of directors approved the decision to retroactively reduce the fee-share, which was communicated to TSB's management and employees, including Wilk. Wilk maintained that the retroactive reduction violated the WFBA. He reported the violation to his attorney and was about to report the violation to the department.[7] Wilk was fired almost immediately after he reported the violation. Because he alleged that the decision had been made and implemented, we conclude that he has sufficiently alleged "an act or conduct that has actually occurred or is ongoing." *Pace*, 499 Mich at 7.

Relying on *Pace,* TSB argues that the decision to cut the fee-share was not *actually* made, so the WPA does not apply. But this is a motion under MCR 2.116(C)(8) and we must accept Wilk's allegations as true. We do not know whether and when the decision to cut commissions was actually made; that can only be determined through discovery. Wilk pleaded that the decision was *actually* made, approved, and was already in effect. That is sufficient to state a WPA claim and survive summary disposition under MCR 2.116(C)(8).

We find *Pace* factually distinguishable. In *Pace,* the motion was brought under MCR 2.116(C)(10), discovery had taken place, and the plaintiff failed to produce evidence that *any* act had taken place in furtherance of the allegedly planned illegal act. The only support that the plaintiff offered was her own subjective belief that the manager planned to misuse funds. *Pace*, 499 Mich at 9-10. There was no indication in the record that the plaintiff had reported that the manager had already misused the funds. *Id.* at 9. Conversely, in this case, Wilk reported to his attorney that TSB's board of directors had already made the decision to retroactively reduce the fee-share compensation and that decision was communicated to TSB management personnel and employees, including Wilk. This is a specific and concrete act in furtherance of the allegedly illegal plan, i.e., TSB's "approved" pay reduction as reflected in the July 2, 2020, email.

"While the lack of an allegation can be fatal under MCR 2.116(C)(8), the lack of *evidence* in support of the allegation cannot." *El-Khalil*, 504 Mich at 162 (emphasis added). Wilk alleged that he was fired in retaliation for engaging in a protected activity. "That is enough to withstand challenge under MCR 2.116(C)(8)." *El-Khalil*, 504 Mich at 162. "The relative strength of the evidence offered by plaintiff and defendants will matter if the court is asked to decide whether the record contains a genuine issue of material fact. But that is only a question under MCR 2.116(C)(10)." *Id.*

---

[7] Wilk alleges that TSB's decision to cut the fee-share from 10% to 5% was reversed because Wilk threatened to sue for the WFBA violation. In other words, TSB refrained from following through with its unlawful decision simply because it was warned by Wilk's counsel.

IV. PUBLIC POLICY

Alternatively, Wilk argues that, if TSB's termination of his employment did not violate the WPA, then he has sufficiently pleaded a public-policy claim for being discharged for exercising his well-established rights afforded under the WFBA. We agree.

Generally, employment relationships are terminable at the will of either party for any or no reason. *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 694-695; 316 NW2d 710 (1982); *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 523; 854 NW2d 152 (2014). "However, an exception has been recognized to that rule, based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Suchodolski*, 412 Mich at 695. Public policy is ordinarily manifested in legislative enactments. *Id*. There are three recognized public policy exceptions to the at-will doctrine:

> (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment." [*McNeil v Charlevoix Co*, 484 Mich 69, 79; 772 NW2d 18 (2009). (citations omitted).]

If a statute explicitly prohibits a particular adverse employment action, then a public-policy claim cannot be asserted because the statute is the exclusive remedy. *Kimmelman v Heather Downs Management Ltd*, 278 Mich App 569, 573; 753 NW2d 265 (2008). It is well established that a plaintiff may not bring a public policy claim for wrongful discharge if the plaintiff has an actionable claim under the WPA. *McNeil-Marks,* 316 Mich App at 26. But "if the WPA does not apply, it provides no remedy and there is no preemption." *Anzaldua v Neogen Corp*, 292 Mich App 626, 631; 808 NW2d 804 (2011). If Wilk successfully establishes a WPA claim, then his public policy claim will evaporate. But Wilk is permitted to plead an alternative, inconsistent claim. MCR 2.111(A)(2); *AFSCME Council 25 v Faust Pub Library*, 311 Mich App 449, 459; 875 NW2d 254 (2015).

Wilk argues that he can maintain a public-policy claim for exercising his statutory rights under the WFBA because the WFBA does not have an applicable anti-retaliatory provision. The WFBA's anti-retaliatory provision provides as follows:

> An employer shall not discharge an employee or discriminate against an employee because the employee filed a complaint, instituted or caused to be instituted a proceeding under or regulated by this act, testified or is about to testify in a proceeding, or because of the exercise by the employee on behalf of an employee or others of a right afforded by this act. [MCL 408.483(1).]

This Court has concluded that this anti-retaliatory provision applies only if an employee is "exercising a right afforded by the act on behalf of *another* employee or other person. Simply exercising a right on one's own behalf would not bring an employee within the purview of [MCL 408.483]." *Reo v Lane Bryant, Inc*, 211 Mich App 364, 367; 536 NW2d 556 (1995) (emphasis in

original). We do not agree with this interpretation, but we are bound by it.[8] MCR 7.215(C)(2), (J)(1). The letter sent by Wilk's attorney to TSB threatened to file a claim with the department on behalf of Wilks, not on behalf of other employees. Accordingly, WFBA's anti-retaliatory provision is not applicable.

Wilk alleges a third-prong public-policy claim, asserting that he was discharged for exercising his rights under the WFBA. The WFBA "is remedial in that it provides a means to enforce rights with respect to wages and fringe benefits and prescribes remedies for violations of these rights." *Buckley v Professional Plaza Clinic Corp,* 281 Mich App 224, 235; 761 NW2d 284 (2008). The textual title to WFBA describes its objective as follows:

> AN ACT to regulate the time and manner of payment of wages and fringe benefits to employees; to prescribe rights and responsibilities of employers and employees, and the powers and duties of the department of labor; to require keeping of records; to provide for settlement of disputes regarding wages and fringe benefits; to prohibit certain practices by employers; to prescribe penalties and remedies; and to repeal certain acts and parts of acts. [1978 PA 390, title.]

Wilk's alleges that his fee-share compensation is either (1) "commission" and considered "wages," or (2) a "bonus" and considered "fringe benefits." MCL 408.471 defines "fringe benefits" and "wages" as follows:

> (e) "Fringe benefits" means compensation due an employee pursuant to a written contract or written policy for holiday, time off for sickness or injury, time off for personal reasons or vacation, bonuses, authorized expenses incurred during the course of employment, and contributions made on behalf of an employee.

> (f) "Wages" means all earnings of an employee whether determined on the basis of time, task, piece, commission, or other method of calculation for labor or services except those defined as fringe benefits under subdivision (e) above.[9]

---

[8] A panel of this Court previously concluded "that *Reo* was wrongly decided and that a conflict panel should evaluate its reasoning and conclusions." *Ramos v Intercare Community Health Network*, 323 Mich App 136, 142; 916 NW2d 287 (2018). This Court declined to convene a special panel to resolve the conflict. *Ramos v Intercare Community Health Network*, unpublished order of the Court of Appeals, issued February 21, 2018 (Docket No. 335061). And the application for leave to appeal to the Supreme Court was denied. *Ramos v Intercare Community Health Network*, 503 Mich 917; 920 NW2d 141 (2018).

[9] The terms "bonus" and "commission" are not defined in the WFBA. But they are defined within the wage and hour division administrative rules. "Commission" is defined as "all earnings of an employee, in addition to the hourly rate of pay, which the employee has been led to expect on a regular basis as a result of an employment contract, agreement, or promise." Mich Admin Code, R 408.701(c). "Bonus" is defined as "a premium or extra or irregular remuneration in addition to wages that is awarded to an employee under a written contract or written policy." Mich Admin

Wilk's alleges that he asserted his rights under MCL 408.472 MCL 408.473 by "demanding to be paid the full 10% fee-share" when he "was paid at month-end July 2020." MCL 408.472 requires an employer to pay an employee the the full amount of earned "wages" on the scheduled payday. And MCL 408.473 provides that fringe benefits are distributable in accordance with the terms of a contract or the employer's written policy. Pursuant to clear and unambiguous language of each of these statutes, employees have a right to timely (1) payment of the full amount of earned "wages" on the scheduled payday, and/or (2) distribution of "fringe benefits" on the due date.

Wilk alleged that he was discharged for exercising his right under the WFBA to the full amount of wages earned and/or fringe benefits that he was entitled to by reporting TSB's decision to retroactively reduce the fee-share compensation. When a plaintiff alleges a third-prong public-policy claim, "[i]t is irrelevant . . . whether [a] plaintiff reported an actual or alleged violation of the law; that [a] plaintiff relies on the exercise of a right conferred by a well-established legislative enactment . . . is sufficient." *Stegall v Resource Technology Corp,* __ Mich __, __; __ NW2d __ (2022) (Docket No. 160495), slip op at 1. Accepting the factual allegations in Wilk's complaint as true, we conclude that he has sufficiently pleaded an alternative claim for wrongful discharge in violation of public policy and the trial court erred by dismissing the claim.

## V. CONCLUSION

We conclude that Wilk has sufficiently pleaded a WPA claim. We also conclude that Wilk has sufficiently pleaded an alternative claim for wrongful discharge in violation of public policy. Accordingly, we reverse the trial court's grant of summary disposition to defendants on each of these claims. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Sima G. Patel

---

Code, R 408.9002(2)(d). The complaint alleges that the fee-share compensation was part of TSB's Commercial Lender Incentive Plan. Because the express terms of the incentive plan are not incorporated in the pleadings, we cannot determine whether the fee-share is a "bonus" or "commission." But we find that a specific designation is unnecessary for our analysis.